UNITED STATES of America,
Plaintiff,

v.

3,276.21 ACRES OF LAND, etc., et al.,
Defendants.

Civ. No. 2161.

United States District Court
S. D. California, S. D.

June 6, 1961.

Francis Whelan, U. S. Atty., Albert
N. Minton, Asst. U. S. Atty., Chief,.

Lands Division, George F. Hurley, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Anson, Gleaves & Dowds, Los Angeles, Cal., and James L. Focht, Jr., San Diego, Cal., by John B. Anson, Los Angeles, Cal., for defendants Myers.

McInnis, Focht & Fitzgerald, by James L. Focht, Jr., San Diego, Cal., for defendants Curtis Coleman and others, grantors.

JAMES M. CARTER, District Judge.

Pretrial in this case had as one of its objects, instructions to be given to appraisers on the legal problem concerned in their appraisement of the property involved.

The particular matter comes before the Court for a pretrial ruling as to the state of the title of Parcel 87 and a portion of Parcel 102, both parcels in this condemnation action.

At the time and date of the filing of the declaration of taking on July 7, 1958, at 3:40 P.M., escrows were in existence for the transfer of legal title to these two properties to Myers and others, hereinafter called the grantees. After the date and hour of taking the escrows were closed and the deeds to grantees recorded.

To understand the problem, it should be pointed out that the Myers group, prior to and at the date of taking owned a large piece of property also condemned in the action, which bordered Parcel 87 on three sides. The fourth side bordered on the Miramar Naval Air Station. The Myers group at the same time owned properties condemned in this action which surrounded the portion of Parcel 102 involved herein.

There is no doubt that the Myers group and the grantors were attempting, prior to the taking, which was publicly known to be imminent, to complete the trade of property involved in the escrows described below, and thus consolidate the two properties here involved with the larger Myers holding adjacent and surrounding them.

The two groups of land owners, grantors and grantees (the Myers group) have stipulated as to the facts and the government has signed the stipulation, with a statement that it neither affirms nor denies certain of the facts set forth therein. We accept the facts for the purpose of our ruling.

The material parts of the stipulation are as follows:

"1. *Ownership of Parcel 87*

"It is hereby *stipulated by and between the defendant parties* hereto that as of the date of the filing of the declaration of taking herein on July 7, 1958, at 3:40 PM., the legal title to the parcel described in the complaint herein as Parcel 87, containing 39.93 acres, was vested in defendants Wilbur W. Myers and Millicent L. Myers, husband and wife, as tenants in common, under the following facts:" (This paragraph is not factual but shows that as between grantors and grantees, they have agreed, that title passed.)

"An original corporation grant deed from Sawday and Sexson, Inc., the former owner of said Parcel 87, which deed was dated July 3, 1958, granting said Parcel 87 to Wilbur W. Myers and Millicent L. Myers, husband and wife, as tenants in common, was executed on that date, July 3, 1958, by the fully authorized president and secretary of Sawday and Sexson Inc. That said transaction involved an exchange of properties between defendants Myers and Sawday and Sexson Inc., in which Sawday and Sexson Inc., deeded to defendants Myers said Parcel 87 in exchange for Lot 79, not included in the Government's taking. That two escrows were opened covering the exchange of deeds on July 3, 1958, with the Union Title Insurance and Trust Company of San Diego, a condition of the escrow being the deposit into said escrow of the respective deeds involving the foregoing exchange of property.

"Escrow No. 642955 involving the transfer from the defendants Myers to Sawday and Sexson, Inc., of said Lot 79 was opened July 3, 1958, at 3:30 P.M. A grant deed from Wilbur W. Myers and Millicent L. Myers to Sawday and Sexson Inc., dated July 3, 1958, and acknowledged July 5, 1958, covering said

Lot 79, was delivered into said escrow on the morning of July 7, 1958.

"Escrow No. 642956 involving the transfer from Sawday and Sexson Inc., to defendants Myers of the property described in the complaint herein as Parcel 87, was opened at the same time, both escrows to be explicitly closed concurrently with each other. The aforesaid corporation grant deed from Sawday and Sexson Inc., to defendants Myers of the property described as Parcel 87 herein was delivered into escrow on the morning of July 7, 1958, at 9:58 A.M. The declaration of taking herein was filed July 7, 1958, at 3:40 P.M. of said day, and said declaration of taking was recorded in the office of the County Recorder of San Diego County on July 9, 1958.

"It is stipulated by and between defendants Myers and Sawday and Sexson Inc., that all of the conditions of said escrows having been performed by the parties thereto prior to the filing of said declaration of taking, that the title to said Parcel 87 passed to defendants Myers prior to the filing of the declaration of taking herein, and that at the time of the filing of said declaration of taking title to said Parcel 87 was in defendant's Myers." (This paragraph is not factual but shows that grantors and grantees agree that title passed.)

"The plaintiff United States of America represents that it neither affirms or denies the facts in this Part I are true and correct, but plaintiff contends that since the deed in question was recorded subsequent to the filing of the declaration of taking, title had not passed.

"It is stipulated that the corporation grant deed from Sawday and Sexson Inc., to defendants Myers of the property described as Parcel 87 was recorded July 8, 1958, subsequent to the filing of the declaration of taking but prior to the recording on July 9, 1958, of said declaration of taking.

"2. *Ownership of a Portion of Parcel 102*

"It is *stipulated by and between defendants Wilbur W. Myers and Zelma N. Myers, and Curtis Coleman*, Maud A. Coleman, David S. Casey, Alberta S. Casey, Minniebelle Beach, David M. Miller, Alice K. Miller, Jack L. Oatman, Elinor S. Oatman, Harold B. Robinson, and Marie L. Robinson, that a triangular portion of the parcel designated in the complaint as Parcel 102 containing approximately 20 acres, together with certain easements of access, were owned by the defendants Myers prior to the filing of the declaration of taking herein on July 7, 1958, at 3:40 PM." (This paragraph is not factual but shows that grantors and grantees agree that title passed.)

"It is *stipulated by all of the parties defendant* hereto that said triangular portion of Parcel 102 containing approximately 20 acres is located in the northeast corner of the parcel described in the complaint as Parcel 102, and that said property is fully and correctly described," (in other documents in this file) "and that said easements of access acquired contemporaneously with said triangular portion of said Parcel 102, are fully and correctly described" (in such documents).

"The *parties hereto stipulate* to the following facts in regard to the escrow involving said portion of Parcel 102, and the said easements of access:

"This transaction involved an exchange of properties whereby the former owners of said parcel described in the complaint as Parcel 102, Curtis Coleman, Maud A. Coleman, David S. Casey, Alberta S. Casey, Minniebelle Beach, David M. Miller, Alice K. Miller, Jack L. Oatman, Elinor S. Oatman, Harold B. Robinson, and Marie L. Robinson, exchanged said triangular portion of Parcel 102, consisting of approximately 20 acres, together with the easements of access therein described, for a portion of Lot 4 in Section 10, not involved in the Government's taking here. Two escrows were opened on June 20, 1958, with Security Title Insurance Company by its escrow No. 312163 and escrow No. 312164.

"Escrow No. 312163 involves the original deed dated June 20th, 1958, signed by Curtis Coleman, Maud A. Coleman,

David S. Casey, Alberta S. Casey, Minniebelle Beach, David M. Miller, Alice K. Miller, Jack L. Oatman, Elinor S. Oatman, Harold B. Robinson, and Marie L. Robinson, the last acknowledgment being July 3, 1958. This deed was delivered into said escrow by a representative of Curtis Coleman, et al., one Charles Kerch, on the morning of July 7, 1958.

"A grant deed from defendants Myers to Curtis Coleman et al., of the said portion of Lot 4, Section 10, which was acknowledged by Wilbur W. Myers on June 27, 1958, by Zelma N. Myers on June 28, 1958, and Millicent L. Myers on July 1, 1958 was delivered into escrow No. 312164 by defendants Myers' representative Charles Clark on or about July 1, 1958.

"It is *stipulated by and between defendants Myers* and *their grantors* Curtis Coleman, Maud A. Coleman, David S. Casey, Alberta S. Casey, Minniebelle Beach, David M. Miller, Alice K. Miller, Jack L. Oatman, Elinor S. Oatman, Harold B. Robinson, and Marie L. Robinson, that legal title to said triangular portion of Parcel 102 and said easements of access had passed to defendants Myers prior to the filing of said declaration of taking on July 7, 1958, although said deeds were not recorded until July 31, 1958." (This paragraph is not factual).

"It is *stipulated by and between defendants Myers* and *Curtis Coleman,* Maud A. Coleman, David S. Casey, Alberta S. Casey, Minniebelle Beach, David M. Miller, Alice K. Miller, Jack L. Oatman, Elinor S. Oatman, Harold B. Robinson, and Marie L. Robinson, that all of the conditions of the respective escrows were performed on the morning of July 7, 1958, prior to the filing of the declaration of taking herein.

"With respect to this Part 2 of this stipulation, plaintiff neither admits or denies the facts herein stated and contends that title to the triangular portion of Parcel 102 and the easements of access had not passed to defendants Myers prior to the filing of said declaration of taking because said deed was not recorded until July 31, 1958.

"Based on the foregoing statements of fact, defendants Myers and Sawday and Sexson Inc., their grantor of the parcel described as Parcel 87, and defendants Myers and Curtis Coleman, Maud A. Coleman, David S. Casey, Alberta S. Casey, Minniebelle Beach, David M. Miller, Alice K. Miller, Jack L. Oatman, Elinor S. Oatman, Harold B. Robinson, and Marie L. Robinson, their grantors to the triangular portion of Parcel 102 and the easements of access, hereby stipulate that title to said properties passed to defendants Myers prior to the filing of the declaration of taking herein." (Not factual).

"It is *stipulated by all of the parties* hereto that the only issue remaining for determination by the Court herein is whether said transfers of title are effective to pass title to defendants Myers by reason of the fact that said deeds were recorded subsequent to the filing of the declaration of taking."

### Discussion

First a few elemental principles of the law of eminent domain should be stated. A condemnation action is a proceeding in rem, against the land. When a fee is condemned the taking wipes out all interest legal and equitable and vests complete title in the government.

Any contest between persons claiming an interest in the award is heard by the Court and not the jury and only after the award for all interests in the land has been made.

Various persons claiming an interest in the land may appear and desire to present proof of fair market value in the first phase of the case, e. g. owners and lessees. Ordinarily the Court is not required to permit duplication in this presentation of evidence of fair market value. If the issue is not being adequately presented by an owner, the Court could permit a lessee to present such proof.

The question as posed by counsel for the land owners and the government is— who had title at the date of taking?

However, the real questions which both sides concede on oral argument, are the following:

May the government show that at the date of taking there was no means of access to parcel 87 if not then owned by grantees, and limited access to the portion of parcel 102? Or if owned by grantees, may they as defendants show that they owned such parcels as part of a larger piece of ground owned by them? The problem presented therefore is unique, in that ordinarily the question arises in a different posture of the case. The questions ordinarily presented in a situation where title at time of taking is involved, are—

1. Who should be made defendants when the government files the action?

2. Who is entitled to the compensation for the property?

3. Who is entitled to put on proof as to the fair market value of the property? None of these questions are presented here.

As to No. 1—who should be made defendants, it is clear from Rule 71A, Rules of Civil Procedure, 28 U.S.C.A., that the government may rely on the state of title at the date of taking, and name as defendants those who appear of record as the owners.

The Rule speaks of those parties *known* to have an interest and refers to a search of title. We are confident that no consideration need be given at the time of filing a condemnation action to equitable or unrecorded owners.

The defendant land owners cite California law as to when title passes. In a proceeding after the award has been fixed, to distribute the proceeds, this law would be pertinent.

The appraisal speaks as of the date of taking. Where the question is as to instructing appraisers we are not about to hold that an appraiser might say "Here is a large parcel with record title in A. Within its boundaries there is a small Parcel with record title in B, but with equitable ownership in A or an incompleted escrow which after taking gives title to A. Therefore we consider the two parcels as one." We discuss later the rule on unitization and how it affects the problem.

Relying on the record title the United States made Parcel 87 a separate parcel. Ordinarily it would have to be appraised as a separate unit, burdened as it was, and benefited as it was by matters of record on the date of taking.

As to No. 2—who is entitled to the compensation, no problem is here presented. The escrows have been completed and if certain monies from the deposit have been paid to the record owners as they appeared at the date of taking, in equity they would be required to transfer the money to the persons who, through the escrows, were entitled thereto. Counsel for the land owners concede there is no problem about their obtaining this money. As to the ultimate award, the Court after trial, may award any remaining monies to the persons entitled thereto.

As to No. 3—who is entitled to put on proof; no real problem is presented. If the court directed that the record owners as of the date of taking should put on proof these record owners (the grantors) would and do state they no longer have any interest in the land or its proceeds, and would therefore not elect to put on any proof. In such event it would obviously be only fair and just, and would actually be required by due process to permit the persons who claim the ownership of the parcels, though their ownership was equitable, to present evidence of fair market value. The government states it would not object to this procedure.

We come to the real problem in the case, namely that the grantees desire to show that they are the owners as of the date of taking, so that they may show that parcel 87 was then a part of the larger surrounding area owned by them; and so they may show that the 20 acre triangular strip in parcel 102 was a part of the larger surrounding area also owned by them; and thus that the entire

area being condemned was owned by the grantees (Myers interest).

The government on the other hand, desires to show that at the date of taking, grantees were not the legal owners of 87 and that 87 had no means of access, and that grantees were not the legal owners of the 20 acre triangular part of parcel 102, and that it had only limited means of access.

█ Having smoked out the real issue in the case, the matter seems to be much ado about nothing, if one considers the application of the principle of unitization. Where parcels are held in different ownership at the date of taking, the proof of the use of such lands in combination or with other lands is not excluded, "if the possibility of such combination is reasonably sufficient to affect market value," McCandless v. United States, 1936, 298 U.S. 342, 56 S.Ct. 764, 80 L.Ed. 1205; citing Olson v. United States, 1934, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236; and United States ex rel. Tennessee Valley Authority v. Powelson, 1942, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390. It should be noted that the Powelson case uses the words "reasonable probability" instead of "possibility." We prefer the test of "reasonable probability" and think this is the law.

█ This "reasonable probability" of unitization or use of parcels in combination is a question of fact to be presented to the jury or the trier of fact. This was done in the Convair case (United States v. 70.39 Acres of Land, D.C., 164 F.Supp. 451) by special interrogatories given to the jury. In that case the jury found that there was no reasonable probability of the unitization of the parcels in the leasehold or term taking, but that there was a reasonable probability of the unitization of the parcels in the fee taking.

Will the defendant land owners be entitled to present to the jury the issue of the reasonable probability of unitization of the parcels, assuming that the record title as of the date of taking as contended for by the government controls? We think there is no doubt but that the defendant land owners will have the right to tender this issue, and when their showing is completed, we would hazard a guess that a jury would find that such reasonable probability existed.

Assume therefore that the record title as of the date of taking controls as contended by the government and shows title in grantors; that the escrows at the moment of taking had not been completed; that all necessary instructions had been signed, deeds had been placed in escrow and everything had been done to complete the transfers except the recordation.

Defendant land owner then calls his expert appraiser and directs his questioning to the issue of "reasonable probability of unitization." Let us assume for example, that the inquiry is directed particularly to parcel 87, which had no means of access. This expert witness will have made a complete study of the title of the land, of the relations of the parcels and will have investigated not only the record title but all other matters which would come to his attention in making a fair and full investigation for the purpose of testifying.

This expert witness therefore, testifies that he interviewed Sawday and Sexson (grantors) the owners of parcel 87 and they stated to him that they had already entered into an escrow to sell the parcels to Myers; that all instructions had been signed, the deed deposited in escrow, and as of the date of taking, nothing remained to be done but to close the escrow and record the deed. He then testifies he interviewed Myers and received the same information.

Furthermore, since this escrow actually existed as of the date of taking, and though not of record, was an existing fact, the Court would rule that the escrow instructions and all the documents in the escrow could be placed into evidence bearing on the issue of probability of unitization.

Under this state of the record, the expert would then say, "I have treated the

property as subject to unitization and have therefore based my appraisals on the various parcels as one unit and not as separate parcels." The jury would be instructed as to the law on probability of unitization and if necessary, special interrogatories could be submitted.

The land owners have stated in open court that if the Court permits evidence of the probability of unitization, they will not contest a holding that the record title be looked at as of the date of taking.

Accordingly, the Court rules that the record title as of the date of taking is in grantors as contended for by the government, but that the escrows and their contents may be received in evidence, and that the issue of the probability of unitization may be presented to and considered by the jury.

Counsel for the United States will prepare an order on this ruling and in such form as to constitute and be used as an instruction to appraisers in their valuation of the property, and serve same and lodge it with the clerk within ten days.