UNITED STATES of America,
Plaintiff-Appellee,

v.

CERTAIN PARCELS OF LAND
Situate IN MONROE COUNTY
et al., Defendants,

Keytel, Inc., Defendant-Appellant.

No. 74–1059.

United States Court of Appeals,
Fifth Circuit.

March 14, 1975.

Anne C. Booth, Tallahassee, Fla., Toby Prince Brigham, Miami, Fla., for defendant-appellant.

Charles F. MacMillan, Wallace H. Johnson, Jacques B. Gelin, Atty., Dept. of Justice, Washington, D. C., Robert W. Rust, U. S. Atty., Miami, Fla., Edward J. Shawaker, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before BROWN, Chief Judge, and BELL and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

■ The landowner seeks a new trial in this condemnation action brought by the Government to acquire land for a Coast Guard search and rescue facility to serve the middle and upper Florida Keys. Primarily, the property owner would have us conclude that the District Judge was clearly in error when he found that the lots were zoned for single-family (RU–1) rather than commercial (RU–3) use. After surveying the testimony and documentary evidence, we are convinced that the property was commercially zoned RU–3 as a matter of law and we reverse.

The condemned two and a quarter acre tract is located on Plantation Key, Monroe County, Florida adjacent to the Overseas Highway, U.S. 1, which connects Key West with the southern end of the Florida peninsula. In addition to its immediate deep water access, the absence of mangrove thickets, the up-to-grade quality of land—eliminating any need for land fill—the availability of docks and an extensive seawall allow the trier of fact on valuation to conclude that this particular land has exceptional quality. Illustrative of the point is the testimony by one witness for the property owner that these combined attributes make estimating the value of the property difficult because there are no comparable pieces of property remaining in the Keys that have been offered for sale.

The property owner, Keytel, Inc., a corporation whose principal stockholders are military personnel, purchased this property in 1958 for the express purpose of commercial development. At that time no zoning restrictions were imposed but deed restrictions placed on the property by the developer in 1957 limited the use of this tract to single-family dwellings. However, in 1959 these deed restrictions were modified by an addendum to the restrictions which stated that the original restrictions had inadvertently omitted a declaration stating that this particular tract was available for apartment, duplex or motel development.

In 1960 county-wide zoning, adopting the existent deed restrictions, was imposed by the Monroe County Zoning Board. The official zoning records of Monroe County show that the original and present zoning of the county is RU-3 allowing hotel and motel use. Zoning categories are shown by a color coding system and the RU–3 designation in yellow shows up vividly on the county plat.

All parties initially stipulated as to the commercial zoning of the property but the Government repudiated this pretrial stipulation [1] and obtained an order from the District Judge directing that the value of the property would be determined on the basis of single-family restrictions.

To support its case on appeal the Government cites two documents. These are two letters, one dated July 15, 1971 from the then director of the Monroe County Building & Zoning Department stating that the land was RU–1 and the second document, dated May 2, 1973, was an almost identical letter from his successor, Kermit Lewin. Ironically, the stipulation of commercial status (see

---

1. The initial stipulation took place on February 21, 1973. Thereafter on May 3, 1973 the Government moved to amend the stipulation based especially on the Lewin letter of May 2.

note 1, *supra*) preceded the most recent letter. In addition, to these two letters, the Government maintains that this single-family designation was supported by the layout of the subdivision, the residential nature of neighboring tracts, and "the fact that the property would seem to be zoned RU–1 except for certain yellow crayon marks." The Government insists that since no one testified as to who specifically colored in the subject property on the map or when, the zoning designations on the official records of Monroe County should be disregarded.

■ The difficulty we have with this case is not one of law. That is well settled. It is the province of the trial judge to decide all issues, legal and factual, save only for the question of just compensation. F.R.Civ.P. Rule 71A(h). *See* United States v. Reynolds, 1969, 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 for a discussion of the operation of the rule in the "scope-of-the-project" context. And we are bound by F.R.Civ.P. Rule 52(a) to give utmost consideration to the findings of the trial judge. However, we cannot understand how the Government intractably persisted in its argument in the face of the repudiation by Director Lewin of his own letter of May 2, 1973 as well as the unambiguous representations of the official zoning documents of Monroe County.

On May 18, 1973 soon after his initial erroneous May 2 letter, Director Lewin wrote again to the Coast Guard attorney correcting his mistake. Appellant offered Director Lewin's testimony both as to the issue of the mistaken letter and as custodian of the official records, but this testimony was circumscribed closely by the trial judge. Conversely, no evidence was offered by the Government to undermine the authenticity of these documents and, while it is true that the District Judge was not bound by the final decree in the state court action, a determination of the development rights as between all of the adjacent land owners, especially one consistent with the county records, was strong confirmation of the status as reflected by the official

records. In addition, there is the fact that the Coast Guard long prior to the condemnation action had leased portions of this very property from appellant for uses which would violate the RU–1 restrictions the Government now asserts.

■ But we do not place the error on F.R.Civ.P. 52(a) and the trial judge's findings of fact, but rather on his rejection of conclusive evidence. The testimony of Lewin, the official custodian, and the uncontradicted testimony that the plat with the zoning colors was both the official record and reflected RU–3 status were admissible under both 28 U.S.C.A. § 1732 (the Business Records Act) and 28 U.S.C.A. § 1738 (state records to be given full faith and credit once authenticated). And it was not for the Judge to disparage or discredit them because there was no proof of who did the coloring. The statute eliminates that anachronism. See generally, Louisville & Nashville R. R. Co. v. Knox Homes Corp., 5 Cir., 1965, 343 F.2d 887, 895; Missouri Pacific R. R. Co. v. Austin, 5 Cir., 1961, 292 F.2d 415, 422; *cf.* United States v. Blake, 5 Cir., 1973, 488 F.2d 101, 104–105.

■ On oral argument, the Government made the alternative argument that even if the trial judge was incorrect in his assessment of the zoning status, the $140,000.00 awarded appellants by the jury was unaffected by this decision. For example, the Government points to the testimony by expert witnesses that the commercial value of the property would be limited because it was only a two and a quarter acre tract. Nevertheless, we remain convinced that the case should be returned for a new trial on the issue of valuation as RU–3 property because we have no way of knowing how the jury arrived at this figure, operating as they were under such severe limitations imposed by the trial judge. All expert testimony on the issue of commercial value given by appellant's witnesses was filtered through to the jury under the Judge's determination that it was RU–1 property and the only opening for higher valuation was the possibili-

ty—but just a possibility—that the property might be rezoned to commercial. Appellant is entitled to a trial without laboring under the burden that the property was not what it was—commercially zoned.

Reversed and remanded.