**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**158.24 ACRES OF LAND, MORE OR LESS, situate IN BEE COUNTY, TEXAS, et al., Defendants,**

**R. J. Welder, Jr., et al.,**
**Defendants-Appellants.**

**No. 74–2361.**

United States Court of Appeals,
Fifth Circuit.

June 30, 1975.

Rehearing Denied Aug. 6, 1975.

See also, D.C., 373 F.Supp. 659.

Allen Wood, Corpus Christi, Tex., for R. J. Welder, Jr.

Edward McDonough, Jr., U. S. Atty., Winston Crowder, James R. Gough, W. Palmer Kelly, Asst. U. S. Attys., Houston, Tex., Wallace H. Johnson, George R. Hyde, Edward J. Shawaker, Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before GOLDBERG, CLARK and GEE, Circuit Judges.

GEE, Circuit Judge:

In 1970, through exercise of its power of eminent domain, the United States acquired certain property interests in Bee County, Texas. To effect its purpose of constructing a radio guidance transmitter, the government took out of a 3,550-acre tract fee simple rights to 26.556 acres, an easement for road purposes in 0.38 acres, and an easement restricting use [1] in 131.31 acres. Prior to the proceedings before the jury at the compensation hearing, the court determined that the highest and best use for

1. Terms of this last easement prohibited construction of buildings and use of unsuppressed electrical equipment but allowed crop cultivation and cattle grazing.

the land in question at the time of the taking was ranching, as an integral part of the entire ranching unit in which the parcels were located. Having so decided, the court next determined that the appropriate measure of damages was the difference between the value of the whole ranch before the condemnation and its value after the taking—and limited testimony before the jury to that measure.

Appellant landowner contends that the trial court erred in both respects: highest and best use and measure of damages. Normally in a partial taking case,[2] the value of the segment is determined by the highest and best use of the property from which the segment is derived. 4A Nichols, Eminent Domain § 14.231, 7 *Id.* § 12.02[3][b] (3d rev. ed. 1971) [hereinafter cited as Nichols]. Use of the before-and-after test is appropriate. 4A Nichols § 14.23. Likewise, when the property interest taken is less than the right to the fee—for example, an easement to use land for a particular purpose—a before-and-after test is commonly used, expressed as the difference in value of the land free of and burdened by the easement. 4 Nichols § 12.-41[2]; 7 Nichols § 12.05; Transwestern Pipeline Co. v. O'Brien, 418 F.2d 15, 17 (5th Cir. 1969). Here landowner urges that we deviate from the general rule. Having disclaimed severance damages and benefits to the remainder, landowner claims that the land must be evaluated as if it were the only parcel he owned.

Since the determination that the land should be considered as part and parcel of the entire ranch is crucial to this case, we begin our review there. The landowner launches a two-pronged argument: first, that the trial court was without authority to decide the question at all, and second, that the court erred in excluding evidence that the best use of the property was smaller tracts.

It is true that the landowner is not limited to showing value of the existing use of the land; evidence of potential uses to which property may readily be converted is properly admissible, since demand for potential use affects market value. Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236 (1934). Under Rule 71A(h), Federal Rules of Civil Procedure, a party may have a jury trial on the single issue of just compensation unless the trial court decides to appoint a three-man commission for that purpose. All other issues in the case, factual and legal, are to be determined by the court. United States v. Reynolds, 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970); United States v. Certain Parcels of Land in Monroe County, 509 F.2d 801 (5th Cir. 1975). Here, says landowner, the court erroneously invaded the jury's domain—just compensation—in the guise of deciding "other" legal and factual issues.

We need not explore the outer parameters[3] of the court's power under *Reynolds* since the proffered evidence was speculative and could have been excluded by the trial court on this ground. "Elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable, should be excluded from consideration, for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value—a thing to be condemned in business transactions as well as in judicial ascertainment of truth." Olson v. United States, *supra*, 292 U.S. at 257, 54 S.Ct. at 709. *See* United States v. Buhler, 305 F.2d 319, 328–29 (5th Cir. 1962).[4]

---

2. A partial taking refers to appropriation in fee of a segment of a larger tract. The government here took 26.556 acres in fee.

3. Which may be broad indeed. There is no constitutional right to jury trial in federal eminent domain proceedings; the only question is construction of Rule 71A(h).

4. Before Rule 71A became effective in 1951, federal courts had to conform either to diverse federal statutory procedures or state procedures in condemnation cases. Wright & Miller, Federal Practice and Procedure § 3041 (1973). As a result, pre-1951 cases are not necessarily controlling on procedural points,

■ Below, the landowner contended that the highest and best use of the land was small rural tracts held, for example, for recreational or residential purposes. Land cut in smaller tracts, he said, would bring a higher price than the land could command if devoted only and forever to its existing use, as part of the surrounding property, ranching. The government countered with evidence that the best use for the land was ranching and that the land was not suitable for the purposes the landowner urged on the court. Since the landowner's evidence was speculative and since no other evidence to disturb the presumption in favor of existing use [5] was presented, we must agree with the government. There was testimony that access to the land was poor. More telling, however, is the failure to show the reasonable probability that the property, *at the time of the taking*, was adaptable and *needed, or likely to be needed in the near future*, for the potential use. Olson v. United States, *supra; see also* Southern Amusement Co. v. United States, 265 F.2d 34, 37 (5th Cir. 1959); and Cameron Development Co. v. United States, 145 F.2d 209, 210 (5th Cir. 1944). While landowner's experts stated that in general there was a market for small tracts across the entire South Texas area, statements with which the government expert agreed, the sole proffered indicator of such a trend in the area south of Beeville was a single group of smaller tracts north of the land in question. However, sales of these tracts were few in number and not concentrated in time period. A good number of them did not take place until two to three years *after* the date of taking—hardly an indication of demand for small tracts at the valuation date. Further, all witnesses agreed that there had been no subdivision in this area, other than the group of sporadically divided tracts mentioned above, even though all the property south of Beeville was susceptible to subdivision. The population growth in Beeville was nearly stagnant. Finally, and significantly, the property borders directly on Chase Air Field, close to the runway, where noise from takeoff and arrival of aircraft would be a constant nuisance.[6] Given this combination of facts, we cannot call it abuse of discretion to keep this testimony from the jury.[7]

It follows that use of the before-and-after rule was not error either. It is the usually-applied rule in partial-taking cases, as noted earlier, and we fail to see how the landowner is injured by its use here. He is in the same position in terms of value as he was before the taking.

Affirmed.

---

although we may adopt them as correct under the Rule. United States v. Reynolds, 397 U.S. 14, n. 13, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970). As for appellant's argument based on Atlantic Coast Line R. Co. v. United States, 132 F.2d 959 (5th Cir. 1943), the court there did no more than approve consideration of evidence not considered so speculative as to require exclusion, given the nature of the land taken. And, the case was decided before 1951.

**5.** United States v. Buhler, 305 ' .2d 319, 328 (5th Cir. 1962); 7 Nichols § 12.02[3][b].

**6.** The landowner's witnesses testified to developments close to airfields in other areas; however, there was no showing of similar population growth patterns or similar types of land in those locations.

**7.** By way of reply brief, the landowner conceded that the ruling would be correct if the evidence was too remote.