388

UNITED STATES of America,
Plaintiff-Appellant,

v.

8.41 ACRES OF LAND, More or Less, SIT-
UATED IN ORANGE COUNTY, STATE
OF TEXAS, and KWW Associates, et al.
and Unknown Owners, Defendants-Ap-
pellees.

UNITED STATES of America,
Plaintiff-Appellant,

v.

5.00 ACRES OF LAND, More or Less, SIT-
UATED IN ORANGE COUNTY, STATE
OF TEXAS, and Firestone Tire and
Rubber Company, et al., Defendants-Ap-
pellees.

UNITED STATES of America,
Plaintiff-Appellant,

v.

6.90 ACRES OF LAND, More or Less, SIT-
UATED IN ORANGE COUNTY, STATE
OF TEXAS, and Firestone Tire and
Rubber Company, et al. and Unknown
Owners, Defendants-Appellees.

No. 81–2136.

United States Court of Appeals,
Fifth Circuit.

July 14, 1982.

Rehearing and Rehearing En Banc
Denied Aug. 30, 1982.

David C. Shilton, Carol E. Dinkins, Jacques G. Gelin, Attys., Appellate Section, U. S. Dept. of Justice, Land and Natural Resources Div., Washington, D. C., Harry W. McKee, Asst. U. S. Atty., Beaumont, for plaintiff-appellant.

George W. Brown, Jr., Beaumont, Tex., for Firestone Tire & Rubber Co. and KWW Associates.

Before DYER *, JOHNSON and WILLIAMS, Circuit Judges.

JOHNSON, Circuit Judge:

The Government is appealing the compensation award in this condemnation case involving pipeline easements for the Strategic Petroleum Reserve. The district court appointed a condemnation commission, which determined an award for easements on two tracts owned by Firestone Tire & Rubber Company (Firestone) and one tract owned by KWW Associates (KWW). The district court consolidated the actions for trial, affirmed the Commission's award, and entered judgment of $164,611 for Firestone and $96,200 for KWW. *United States v. 5.00 Acres of Land, etc.,* 507 F.Supp. 589 (E.D.Tex.1981).

* Circuit Judge of the Eleventh Circuit, sitting by

I.  *Background*

After the 1974 Arab oil embargo, Congress authorized creation of the Strategic Petroleum Reserve (Reserve) for the storage of up to one billion barrels of petroleum as protection against energy supply interruptions. As amended in 1978, 42 U.S.C. § 6201 *et seq.* allows acquisition of land for this project. Acquisition of multiple pipeline easements was necessary in order to carry petroleum, brine, and fresh water running to and from the Reserve's salt-dome storage caverns.

On March 8, 1978, the Department of Energy (DOE) filed a declaration of taking for one such multiple pipeline easement on three adjacent tracts of land in Orange County, Texas. The easements adjoined the north side of an existing "pipeline corridor" which followed an east-west farm-to-market road. The road, the pipeline corridor, and the new easements all bisected a 700-acre tract owned by KWW and an 1100-acre parcel of two tracts owned by Firestone. The entire KWW tract and the Firestone tracts north of the road were used as pasture, and a factory stood on the Firestone tracts south of the road. Many of the world's largest chemical plants were located in the same area. The interest acquired by the DOE was a perpetual, assignable, fifty-foot easement for multiple pipelines and a twenty-five foot temporary work easement for a period of three years. The total taking was 6.90 acres from Firestone as a permanent easement, 4.73 acres from Firestone as a temporary working easement, 5.3 acres from KWW as a permanent easement, and 3.11 acres from KWW as a temporary work easement. Shortly after a declaration of taking, the DOE placed a single 42-inch pipeline within the fifty-foot easement.

The district court appointed a three-person condemnation commission (Commission) to make a finding on just compensation for easements on these adjacent tracts. The normal procedure in awarding compensation for an easement is to determine the highest and best use of the entire acreage

designation.

within the property lines of the parent tract and then calculate the difference between the market value of that tract before and after the taking. Indeed, the district court carefully instructed the Commission to use such a "before-and-after" valuation as a measure of compensation where a segment of a larger tract is taken.[1] Consistent with this approach, Jack Aulbaugh, the Government's valuation witness, testified that the highest and best use of the KWW and Firestone tracts was for industrial plant sites. Using five comparable sales of industrial property in the area, Aulbaugh valued the tracts at the time of the taking at $3500 per acre, and calculated the before-and-after value of the tracts on this basis. Aulbaugh found the value of the permanent easements to be $16,695 and $21,700 for KWW's and Firestone's property, respectively.[2]

The landowners' valuation witnesses, however, presented the Commission with an unorthodox theory of easement valuation which provided a dramatically higher compensation award. William Cook for KWW and Willard Hall for Firestone asserted that the Commission should treat the fifty-foot strip of condemned land as a separate entity from the remaining acreage within the property lines of each tract. On this basis, they determined the highest and best use of the condemned strip of land to be for pipeline right-of-way. Using comparable sales of pipeline easements in the area, they valued the condemned strips at approximately $16,000 to $19,000 per acre, and treated the Government's permanent easement as a total taking. Cook valued the permanent easement at $85,000 on KWW property—Hall, at $132,751 on Firestone's property.

Cook and Hall had never used this procedure for valuing pipeline easements before, and failed to define the exact boundaries of the "potential" pipeline corridor which they claimed existed on the Firestone and KWW tracts.[3] Nevertheless, the Commission accepted the landowners' method of appraisal, finding that the particular strips of land subject to the easements had been effectively "severed" from the larger parcels. The Commission determined the highest and best use of the condemned property was for pipeline right-of-way, not industrial plant sites. The Commission accepted the landowners' estimates of damages and

1. The district court's general instructions to the Condemnation Commission recite, in pertinent part:

   In these cases where only a portion of a larger tract of land belonging to the same landowner is taken, you must first determine the fair cash market value, immediately before the taking, of the entire tract of land of which the portion taken was a part, in the light of the highest and best use at the time of the entire tract as a single unit. You must next determine the fair cash market value, immediately after the taking, of the remainder of the tract not taken, bearing in mind that the highest and best use of the remainder after the taking may not be the same as the highest and best use of the entire tract before the taking. The difference between these two figures is the just compensation to which the landowner is entitled, both for that part of his property which has been taken and for the diminution in value, if any, of the remainder of his property. This takes care of any "severance damages" or any "enhancement in value," if any, and you are not to make any separate award of these or consider them further.

2. For a before-taking value, Aulbaugh multiplied $3500 times the number of acres in each tract. For an after-taking value, he calculated

that the area covered by the permanent easement would be reduced 90% from its fee value. Additionally, he allowed $3500 of severance damages to the Firestone parcel. For the temporary easements, he multiplied a rental factor of 32% times the acreage of the 25-foot strips times the $3500 per acre value. This yielded temporary easement damages of $3483 for KWW and $5200 for Firestone.

3. Upon cross-examination, Hall defined the corridor as follows:

   Yes, sir, it's defined as being—I thought I described it as being adjacent to the north line of 1006 and extending to a northward direction some—I estimated about 66 acres altogether; there's about 39 acres in it now, but I estimated the corridor at the present time would be about 66 acres which would allow for additional lines over, say, the next 20 or 25 years .... I wouldn't consider it speculative because you have 15 lines put in there in the past 20 years, and I would think if 15 lines could go in in the previous 20 years and you have a growing chemical complex there, you could surely have 15 lines going in in the next 20 years.

awarded $164,611.27 to Firestone and $96,-200.00 to KWW for both permanent and temporary easements.

Applying the clearly erroneous standard, the district court affirmed the Commission's findings that (1) the condemned tracts had been severed from the large parent tracts at the time of the taking and constituted a separate and distinct pipeline corridor; (2) the highest and best use of the property was as a pipeline right-of-way and easement; and (3) the landowners would have a right to return to the court for additional compensation if additional lines were laid in the easement, in order to avoid forcing the Commission to speculate on how many lines the Government would lay in the easement. The district court also approved the Commissioner's compensation awards. The Government appeals all three findings.

## II.  *Method of Valuation*

The district court adopted the Commission's finding that the fifty-foot condemned tract was constructively "severed" from the remaining part of each of the three parent tracts. Accordingly, the district court rejected the before-and-after method of valuing each parent tract as a basis for awarding compensation. The Government asserts that the district court erred in finding this method of valuation inappropriate.

Federal courts have long held that an appropriate measure of damages in a partial-taking case is the difference between the value of the parent tract before the taking and its value after the taking.[4] *United States v. Virginia Electric Co.*, 365 U.S. 624, 632, 81 S.Ct. 784, 790, 5 L.Ed.2d 838 (1961); *United States v. Grizzard*, 219 U.S. 180, 185–86, 31 S.Ct. 162, 164, 55 L.Ed. 165 (1911); *Shepherd v. Baltimore & O.R. Co.*, 130 U.S. 426, 433, 9 S.Ct. 598, 601, 32 L.Ed. 970 (1889); *United States v. Trout*, 386 F.2d 216, 221 (5th Cir. 1967); *Stephenson Brick Co. v. United States*, 110 F.2d 360, 361 (5th Cir. 1940). When the property interest taken from a parent tract is merely an easement, the proper measure of damages is still the before-and-after method of valuation, expressed as the difference between the market value of the land free of the easement and the market value as burdened with the easement. *Virginia Electric*, 365 U.S. at 630, 81 S.Ct. at 789; *Olson v. United States*, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236 (1934); *158.4 Acres of Land, in Bee County, Texas*, 515 F.2d at 232; *United States v. Brumfield*, 354 F.2d 882 (5th Cir. 1966); *Slattery Company v. United States*, 231 F.2d 37 (5th Cir. 1956). *See also United States v. 1,129.75 Acres of Land, etc.*, 473 F.2d 996, 998 (8th Cir. 1973). This Court in *Transwestern Pipeline Co. v. O'Brien*, 418 F.2d 15, 21 (5th Cir. 1969), explicitly upheld the appropriateness of this method for valuing pipeline easements.[5]

---

**4.** A partial taking generally refers to an appropriation in fee of a portion of a larger tract. *United States v. 158.24 Acres of Land, in Bee County, Texas*, 515 F.2d 230, 232 (5th Cir. 1972).

**5.** 4A Nichols, *The Law of Eminent Domain* § 14.31 (rev. 3d ed. 1981) notes at least two methods by which just compensation in partial taking cases can be ascertained. The first is the *before-and-after* method of valuation, which computes damages to be the difference in the value of the entire parent tract before the taking and the value of the portion remaining after the taking. The second method computes damages as the value of the actual land taken plus the diminution in the value of the remaining land in the parent tract. Both methods take into consideration the loss of the part taken and "severance damages" to the remainder of the property left after the taking.

The Fourth Circuit *allows* use of the second method. *United States v. 97.19 Acres of Land, More or Less*, 582 F.2d 878, 881 (4th Cir. 1978). Texas law *requires* the second method: namely, awarding the fair market value of the *strip actually taken*, plus damages for any diminution in value of the landowner's remaining property by virtue of the severance or use to which the strip taken is to be put. *State v. Meyer*, 403 S.W.2d 366, 371 (Tex.1966); *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194, 197 (1936).

The applicable federal law in the Fifth Circuit, however, requires the *exclusive* use of the before-and-after method of valuation. In *Transwestern, supra,* this Court stated that the correct measure of value in a federal court condemnation substantially conformed to Transwestern's requested charge to the Condemnation Commission, which recites as follows:

[T]hat the sum of the compensation for the damages to the strip of land which is subject

■ The district court, however, has held that each condemned strip of land is the appropriate "parent tract" for purposes of valuation, because it was "severed" from the remaining acreage within the property lines of each KWW and Firestone tract. When applicable, the issue of unity or separateness of tracts is a question of fact to be presented to the trier of fact. *United States v. Reynolds*, 397 U.S. 14, 18–19, 90 S.Ct. 803, 806–807, 25 L.Ed.2d 12 (1970); *United States v. 3276.21 Acres of Land*, 194 F.Supp. 297 (S.D.Cal.1961). Three factors are particularly helpful in ascertaining whether property taken is part of a single, larger tract: physical contiguity, unity of ownership, and unity of use. Nichols, 4A *Eminent Domain* (1981 Supp.) at 14–393, 14–416, 14–424; *Babinec v. State*, 512 P.2d 563 (Sup.Ct.Alaska 1973). When an owner actually uses parts of what would otherwise constitute a unified tract for different or separate purposes, however, the parts may be held to be functionally "separate" tracts, though they are not physically separate.[6] *See Sharp v. United States*, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211 (1903); *United States v. Honolulu Plantation Co.*, 182 F.2d 172, 179 (9th Cir. 1950). Integrated use is the key test for unity of a tract. *Baetjer v. United States*, 143 F.2d 391 (1st Cir. 1944).

*See also, United States v. Easements Upon 104.09 Acres of Land*, 442 F.Supp. 926, 927 (E.D.Wash.1977).

■ If the district court adopts a condemnation commission's findings, the court of appeals must accept the findings, as adopted by the district court, unless they are "clearly erroneous." *United States v. Merz*, 376 U.S. 192, 84 S.Ct. 639, 643, 11 L.Ed.2d 629 (1964); *Sharp v. United States*, 24 S.Ct. at 117. *See also United States v. 403.14 Acres of Land*, 553 F.2d 565, 570 (8th Cir. 1977). The district court in the instant case adopted the Commission's finding that the strips of land burdened by the easement condemnations were severed from the larger 700-acre parcel owned by KWW and the 1100-acre two-tract parcel owned by Firestone. The Commission based this finding upon the pipeline alley already in the area and the previous permanent pipeline easements sold on the parent tracts.

■ In each instance, however, the condemned strip of land had an integrated use with the parent tract—namely, pastureland. There was no evidence in the Commission's recommendations and findings that pipelines existed in the fifty-foot strip of land at issue.[7] Neither did each condemned strip of land lie between existing

to condemnation and the damage to the remaining tract shall be the equivalent to the compensation determined by comparing the fair market value of the entire tract affected by the taking before and after the taking; that is to say, it should be equivalent to the sum of money obtained by subtracting the fair market value of what remains after the taking, from the fair market value of the whole immediately before the taking. *See also 158.24 Acres of Land, in Bee County, Texas*, 515 F.2d at 233.

6. The "unity" of a tract normally becomes an issue where landowners are seeking to qualify for "severance damages" to property not taken. A landowner is not entitled to severance damage compensation for injury to separate and independent parcels belonging to him which results from the taking. *United States v. Miller*, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1942). In the instant case, the landowners wish to disclaim any severance damages to the remaining tract and demonstrate that what appears to be a unified tract is actually two "separate" tracts. In this manner, the landowners wish to characterize the strip of land burdened

by the easements as a separate "pipeline corridor," which will command a higher compensation award.

7. The Commission's finding that the condemned strips of land were "severed" from the parent tracts, recites, in pertinent part, as follows:

[t]he Commission was faced with the problem of a piece of property, admittedly attached to and adjacent to a larger tract of property owned by the same land owner, however, having been severed by uses inconsistent with the use of the balance of the property. The particular tracts under consideration have been effectively severed from the main body of the ownership by previous easements and grants given to others. These easements caused an alienation of the use of the particular tracts here condemned. They are in this particular alley being used for pipelines. * * * The Commission has taken into consideration that the usual way of appraising property is to take the parent tract's valuation and subtract therefrom the value of the part left in the land owner, thus giving

pipelines, but rather at the edge of a large field adjacent to existing pipeline easements. The landowners had taken no steps to sever the condemned strips of land from the rest of the property. The landowners' witnesses could not even convincingly define the exact parameters of the "potential" pipeline corridor within which the fifty-foot condemned strip of land was located. The mere fact that the landowners hoped that these tracts would be acquired for pipeline purposes did not sever them from the rest of the land.[8] *See Cole Investment Co. v. United States*, 258 F.2d 203, 205 (9th Cir. 1958). This Court therefore determines that the Commission was clearly erroneous in finding that the strips of condemned land were "severed" from their parent tracts.

Because the district court erred in categorizing the strip of land as a "separate parcel," it also erred in rejecting the "before-and-after" method of valuation of the larger tract. Accordingly, this Court must remand this cause to the district court so the Commission may properly determine compensation by comparing the fair market value of the parent tracts before and after the taking.

### III. Evidence of Highest and Best Use

The district court also accepted the Commission's finding that pipeline right-of-way was the highest and best use of the condemned property. Accordingly, the district court based its compensation award on the landowners' evidence of comparable sales of pipeline easements in the area. The Government contends the district court erred in basing its compensation award on such evidence.

■■■ An owner of lands to be condemned is entitled to their "market value fairly determined." *United States v. Miller*, 317 U.S. 369, 63 S.Ct. 276, 280, 87 L.Ed. 336 (1943). The value is to be ascertained as of the date of the taking. *United States v. Reynolds*, 397 U.S. 14, 90 S.Ct. 803, 805, 25 L.Ed.2d 12 (1970), *Miller, supra.* The burden of establishing the value of lands sought to be condemned is on the landowner. *Powelson*, 63 S.Ct. at 1052.

■■■ In determining the market value, this Court must look not only at the present use of the property, but also at the highest and best use for which the property is adaptable and needed. *United States v. Buhler*, 305 F.2d 319, 327 (5th Cir. 1962); *Cameron Development Co. v. United States*, 145 F.2d 209, 210 (5th Cir. 1944). There is a presumption, however, in favor of the existing use of the land which can only be overcome if the landowner can show the reason-

credit for enhancement or devaluation of surrounding property still in the hands of the land owner. It is felt in this particular situation that this method of appraisal is inappropriate in that by the granting of easements which are perpetual in nature, the land owner has previously severed these tracts from the parent tract leaving a remainder that must stand on its own feet.

8. In *158.24 Acres of Land, in Bee County, Texas*, 515 F.2d at 232, this Court appears to have allowed evidence of the highest and best "potential" use, as well as existing use, of land for the purpose of determining whether the parcel is separate and independent, or part of the whole. *See also United States v. 105.40 Acres of Land, etc., Porter County, Ind.*, 471 F.2d 207 (7th Cir. 1972). *But see Cole Investment Co., supra; Easements Upon 104.09 Acres of Land, supra.* Potential use, however, may be weighed only if there is a "reasonable probability" the lands in question will be put to that use in the reasonably near future. *See United*

*States for Use of T. V. A. v. Powelson*, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943); *158.24 Acres of Land in Bee County, Texas, supra.* Furthermore, potential use is only one factor to consider in determination of the "unity" issue, along with unity of ownership, contiguity, and existing use.

In the instant case, the landowners demonstrated no existing plan to place more pipelines in the corridor in the immediate future. Testimony by Willard Hall on the potential use of the land over the next "twenty-five years" was speculative. Furthermore, existing use, unity of legal title, and contiguity clearly outweighed any possible potential use of the condemned strip for purposes of determining the unity of the condemned and remaining parcels. To allow a district court under such speculative and imprecise conditions to "sever" a parcel for the purpose of awarding a very high compensation award would unfairly strain the federal treasury.

able probability that the property, at the time of the taking, was adaptable and needed, or likely to be needed in the near future, for the potential use. *Olson v. United States*, 292 U.S. 246, 54 S.Ct. 704, 708–709, 78 L.Ed. 1236 (1934). The district court must also value the property as a whole rather than the sum of the various uses to which it has been placed. *United States v. Certain Parcels of Land in Rapides Parish, La.*, 149 F.2d 81, 82 (5th Cir. 1945). The value of separate interests cannot exceed the worth of the whole. *United States v. Dunnington*, 146 U.S. 338, 351, 13 S.Ct. 79, 83, 36 L.Ed. 996 (1892); *see Texas v. Harris County, Houston Ship Channel Navigation District*, 158 F.2d 861, 865 (5th Cir. 1946). The best evidence of market value is comparable sales—*i.e.*, sales from a willing seller to a willing buyer of similar property in the vicinity of the taking at or about the same time as the taking. *Trout*, 386 F.2d at 222–23.

The Commission heard no evidence supporting a finding that the highest and best use of the entire parent tracts was for pipeline right-of-way. The Commission, therefore, had no justification for basing its compensation award on evidence of comparable sales of pipeline easements. The Commission's findings on use and market value are, therefore, clearly erroneous, and the district court erred in adopting them.

In contrast, the Government's characterization of use and value was appropriate and proper. The Government's valuation witness testified that the highest and best use of the parent tracts was for industrial plant sites; it was based upon the large number of industrial plants in the immediate area. He correctly based his assessment of market value on evidence of five valid comparable sales of industrial property in the area at the time of the taking. His estimate of damages to the landowners was, therefore, appropriate and uncontested.

In an exercise of the power of eminent domain, due process requires that the owners be given an opportunity to be heard on the issue of compensation. *Bragg v. Weaver*, 251 U.S. 57, 58–59, 40 S.Ct. 62, 63 (1919). The landowners had an opportunity to prove the market value of the tracts was higher than established by the Government, but failed to meet this burden; they only presented evidence of comparable sales of pipeline right-of-way. Accordingly, it is unnecessary to conduct additional hearings on determining the fair market value of the parcels. The cause is thus remanded to the district court for determination of the fair market value, with instructions to rely upon the evidentiary record as it presently exists. In calculating the fair market value, the district court shall consider the highest and best use of the tracts as industrial plant sites and shall base an award of compensation for both permanent and temporary easements upon the evidence of comparable sales submitted by the Government.[9]

The district court's judgment is reversed and this cause remanded for an award of compensation based upon the before-and-after method of valuation utilizing the Government's evidence of comparable sales for industrial plant sites.

REVERSED AND REMANDED.

---

**9.** The Government's contention that the comparable pipeline right-of-way sales reflected "hold-up value" rather than "fair market value" need not be addressed because this Court has determined that the district court was clearly erroneous in establishing the highest and best use of the land taken as pipeline right-of-way.

The Government also contends the district court erred in making provision for the landowners to return for additional compensation if the Government actually places additional pipelines in the area covered by the easement. Because the highest and best use of the parent tracts has been established to be for industrial plant sites and the "damage" occurred when the Government laid a single pipeline within the easement, no additional compensation is appropriate or possible beyond that required by the before-and-after method of valuation.