UNITED STATES *v.* REYNOLDS ET UX.

No. 88. Argued January 14, 1970—Decided February 24, 1970

*Assistant Attorney General Kashiwa* argued the cause for the United States. With him on the brief were *Solicitor General Griswold, Raymond N. Zagone,* and *Robert S. Lynch.*

*Erwin S. Solomon* argued the cause and filed a brief for respondents.

MR. JUSTICE STEWART delivered the opinion of the Court.

The United States brought this suit in the United States District Court for the Western District of Kentucky to condemn more than 250 acres of the respondents' land for a federal development known as the Nolin Reservoir Project located in that State. An important issue in the case was raised by the respondents' claim that 78 acres of the land, taken for construction of recreational facilities adjacent to the reservoir, had not been within the original scope of the project.[1]   A jury

---

[1] Congress authorized the Nolin Reservoir Project in 1938 as part of a comprehensive flood control plan for the Ohio and Mississippi Rivers. See Act of June 28, 1938, § 4, 52 Stat. 1217. Congress

awarded the respondents $20,000 as just compensation for all the land taken.  Upon an appeal by the respondents, the Court of Appeals for the Sixth Circuit reversed the judgment and ordered a new trial, finding that the District Judge in his instructions to the jury had erroneously referred to matters disclosed outside the jury's presence.[2] The trial and appellate courts were in agreement, however, in rejecting the Government's contention that the "scope-of-the-project" issue was for the trial judge to decide and should not, therefore, have been submitted to the jury at all.  There being a conflict between the circuits on this question,[3] we granted certiorari to consider a recurring problem of importance in federal condemnation proceedings.  396 U. S. 814.

The Fifth Amendment provides that private property shall not be taken for public use without just compensa-

---

first appropriated funds for the planning stage of the project in 1956.  See Public Works Appropriation Act of 1957, 70 Stat. 479. In July 1958 the Chief of Army Engineers approved a general design memorandum contemplating the construction of recreational areas in connection with the project, but evidently not specifying where they would be.  The first funds for construction were appropriated in 1958.  See Public Works Appropriation Act of 1959, 72 Stat. 1573.  Construction began in January 1959.

Most of the respondents' acreage condemned by the Government was taken because it would be inundated by the reservoir, and there is no question that this land was within the original scope of the project.  But 78 acres of the tract were taken for the construction of recreational facilities adjacent to the reservoir itself.  These 78 acres were not referred to in a design memorandum submitted in June 1959.  They were, however, designated for taking in a memorandum approved in October of that year.  It has been Government policy to build recreational areas in conjunction with federal reservoir projects since 1944.  Act of December 22, 1944, § 4, 58 Stat. 889.

[2] *United States* v. *811.92 Acres of Land,* 404 F. 2d 303.

[3] The Court of Appeals for the Fifth Circuit has held that the "scope-of-the-project" issue is to be determined by the trial judge. *Wardy* v. *United States,* 402 F. 2d 762, 763.

16

tion.  And "just compensation" means the full monetary equivalent of the property taken.[4]  The owner is to be put in the same position monetarily as he would have occupied if his property had not been taken.[5]  In enforcing the constitutional mandate, the Court at an early date adopted the concept of market value: the owner is entitled to the fair market value of the property [6] at the time of the taking.[7]  But this basic measurement of compensation has been hedged with certain refinements developed over the years in the interest of effectuating the constitutional guarantee.  It is one of these refinements that is in controversy here.

The Court early recognized that the "market value" of property condemned can be affected, adversely or favorably, by the imminence of the very public project that makes the condemnation necessary.[8]  And it was perceived that to permit compensation to be either reduced or increased because of an alteration in market value attributable to the project itself would not lead to the "just compensation" that the Constitution requires.[9]  On the other hand, the development of a public project may also lead to enhancement in the market value of neighboring land that is not covered by the project itself.  And if that land is later condemned, whether for an extension of the existing project or for some other public purpose, the general rule of just compensation requires that such enhancement in value be

---

[4] *Monongahela Navigation Co.* v. *United States,* 148 U. S. 312, 326.

[5] *United States* v. *New River Collieries Co.,* 262 U. S. 341, 343; *Seaboard Air Line R. Co.* v. *United States,* 261 U. S. 299, 304.

[6] *New York* v. *Sage,* 239 U. S. 57, 61; *Boom Co.* v. *Patterson,* 98 U. S. 403, 408.

[7] *Kerr* v. *South Park Commissioners,* 117 U. S. 379, 386.

[8] *Shoemaker* v. *United States,* 147 U. S. 282, 304–305.

[9] *United States* v. *Virginia Electric & Power Co.,* 365 U. S. 624, 635–636; *United States* v. *Cors,* 337 U. S. 325, 332–334.

wholly taken into account, since fair market value is generally to be determined with due consideration of all available economic uses of the property at the time of the taking.[10]

In *United States* v. *Miller,* 317 U. S. 369, the Court gave full articulation to these principles:

"If a distinct tract is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. Should the Government, at a later date, determine to take these other lands, it must pay their market value as enhanced by this factor of proximity. If, however, the public project from the beginning included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent lands not immediately taken increased in value due to the projected improvement.

"The question then is whether the respondents' lands were probably within the scope of the project from the time the Government was committed to it. If they were not, but were merely adjacent lands, the subsequent enlargement of the project to include them ought not to deprive the respondents of the value added in the meantime by the proximity of the improvement. If, on the other hand, they were, the Government ought not to pay any increase in value arising from the known fact that the lands probably would be condemned. The owners ought

---

[10] *United States* v. *Chandler-Dunbar Water Power Co.,* 229 U. S. 53, 81; *Boom Co.* v. *Patterson, supra.*

not to gain by speculating on probable increase in value due to the Government's activities." 317 U. S., at 376–377.

There is no controversy in the present case regarding these basic principles. The parties agree that if the acreage in issue was "probably within the scope of the project from the time the Government was committed to it," substantially less compensation is due than if it was not. For if the property was probably within the project's original scope, then its compensable value is to be measured in terms of agricultural use. If, on the other hand, the acreage was outside the original scope of the project, its compensable value is properly measurable in terms of its economic potential as lakeside residential or recreational property.

The issue between the parties is simply whether the "scope-of-the-project" question is to be determined by the trial judge or by the jury. There is no claim that the issue is of constitutional dimensions. For it has long been settled that there is no constitutional right to a jury in eminent domain proceedings. See *Bauman v. Ross*, 167 U. S. 548, 593. As Professor Moore has put the matter:

> "The practice in England and in the colonies prior to the adoption in 1791 of the Seventh Amendment, the position taken by Congress contemporaneously with, and subsequent to, the adoption of the Amendment, and the position taken by the Supreme Court and nearly all of the lower federal courts lead to the conclusion that there is no constitutional right to jury trial in the federal courts in an action for the condemnation of property under the power of eminent domain." [11]

[11] 5 J. Moore, *Federal Practice* ¶ 38.32 [1], p. 239 (2d ed. 1969). (Footnote omitted.)

It is not, therefore, to the Seventh Amendment that we look in this case, but to the Federal Rules of Civil Procedure. Rule 71A (h) provides that, except in circumstances not applicable here, "any party" to a federal eminent domain proceeding "may have a trial by jury of the issue of just compensation," unless the court in its discretion orders that that issue "shall be determined by a commission of three persons appointed by it. . . . Trial of all issues shall otherwise be by the court." [12] The Rule thus provides that, except for the single issue of just compensation, the trial judge is to decide all issues, legal and factual, that may be presented. The critical inquiry is thus whether "the issue of just compensation," as that phrase is used in the Rule, is broad enough to embrace the question whether the condemned property was probably within the scope of the federal project.[13]

---

[12] The full text of Rule 71A (h) is as follows:

"If the action involves the exercise of the power of eminent domain under the law of the United States, any tribunal specially constituted by an Act of Congress governing the case for the trial of the issue of just compensation shall be the tribunal for the determination of that issue; but if there is no such specially constituted tribunal any party may have a trial by jury of the issue of just compensation by filing a demand therefor within the time allowed for answer or within such further time as the court may fix, unless the court in its discretion orders that, because of the character, location, or quantity of the property to be condemned, or for other reasons in the interest of justice, the issue of compensation shall be determined by a commission of three persons appointed by it. If a commission is appointed it shall have the powers of a master provided in subdivision (c) of Rule 53 and proceedings before it shall be governed by the provisions of paragraphs (1) and (2) of subdivision (d) of Rule 53. Its action and report shall be determined by a majority and its findings and report shall have the effect, and be dealt with by the court in accordance with the practice, prescribed in paragraph (2) of subdivision (e) of Rule 53. Trial of all issues shall otherwise be by the court."

[13] In *United States* v. *Miller, supra*, it appears that that question was decided by the trial judge, who excluded all evidence of enhanced

Although the matter could be decided either way without doing violence to the language of Rule 71A (h), we think the Rule's basic structure makes clear that a jury in federal condemnation proceedings is to be confined to the performance of a single narrow but important function—the determination of a compensation award within ground rules established by the trial judge. The Rule gives the trial court discretion to eliminate a jury entirely. And when a jury is afforded, the sweeping language of the final sentence of the Rule discloses a clear intent to give the district judge a role in condemnation proceedings much broader than he occupies in a conventional jury trial. It is for him to decide "all issues" other than the precise issue of the amount of compensation to be awarded. It follows that it is for the judge to tell the jury the criteria it must follow in determining what amount will constitute just compensation, and that in order to do so he must decide the "scope-of-the-project" issue as a preliminary matter. We therefore approve and adopt the procedural rule announced by the Court of Appeals for the Fifth Circuit in *Wardy* v. *United States,* 402 F. 2d 762, and hold that it is for the judge and not the jury to decide whether the property condemned was probably within the project's original scope.[14]

---

value attributable to the project. 317 U. S., at 372–373. While this Court's opinion in *Miller* approved of that procedure, it is to be remembered that the case was decided before the adoption of Rule 71A (h) in 1951, at a time when federal courts in condemnation proceedings followed the procedures of the States in which they were located. See Advisory Committee Notes to Rule 71A; 7 J. Moore, *supra,* ¶ 71A.03, p. 2716 (2d ed. 1968).

[14] "The question was whether appellants' 'lands were probably within the scope of the project from the time the Government was committed to it.' . . . Appellants contend that the jury should have been allowed to answer this question. Under rule 71A (h) the jury's function is limited to determining 'just compensation.' It is

Finally, the Government asks us to take this occasion to "clarify" the "scope-of-the-project" test. We think the test was stated with admirable clarity by a unanimous Court in *Miller:* if the "lands were probably within the scope of the project from the time the Government was committed to it," no enhancement in value attributable to the project is to be considered in awarding compensation. As with any test that deals in probabilities, its application to any particular set of facts requires discriminating judgment.[15] The rule does not require a showing that the land ultimately taken was actually specified in the original plans for the project. It need only be shown that during the course of the planning or original construction it became evident that land so situated would probably be needed for the public use.

The judgment of the Court of Appeals is vacated, and the case is remanded to the United States District Court for the Western District of Kentucky for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK concurs, dissenting.

All constitutional questions aside, there was in the present case a right to trial by jury on "the issue of just compensation" as provided in Rule 71A (h). I do not

---

the duty of the court to decide the legal issues, as well as all other fact issues. [Citations omitted.] Thus, instead of infringing on the jury's functions, the judge merely decided a legal question which limited the factors necessary to the determination of 'just compensation.'" *Wardy* v. *United States,* 402 F. 2d, at 763. See also *Scott Lumber Co.* v. *United States,* 390 F. 2d 388, 392 (C. A. 9th Cir.); *United States* v. *91.69 Acres of Land,* 334 F. 2d 229, 231–232 (C. A. 4th Cir.).

[15] Compare *John L. Roper Lumber Co.* v. *United States,* 150 F. 2d 329, 332, with *Scott* v. *United States,* 146 F. 2d 131, 132–133.

see how "the issue of just compensation" can be decided without considering whether or not the property was probably within or not within the project's original scope. As the opinion of the Court makes plain, important questions of value turn on that decision. In this case it is seen in the difference between the value of the property as agricultural land and its value as potential lakeside residential or recreational property.

If it were certain beyond doubt that the property was within the original scope of the project, a different question might be presented. But there is nothing in this record to show that respondents' property was included in the original design. We deal here with probabilities or perhaps with possibilities. If the property were not within the original design, a purchaser could reasonably anticipate that he would be able to devote the land to its highest economic use reflected in part by its proximity to the Government's project. Henry George [1] would have it otherwise; but that has not been the direction of our economy. Hence what we are talking about is market value and that in turn includes all of the ingredients that make up price. The most central element of price in the area now litigated was the relation of the land to the original project and that issue was one of fact. The "issue of just compensation" [2] as used in Rule 71A (h)

---

[1] Progress and Poverty, Book VI (50th Ann. ed. 1945).

[2] In *United States* v. *Certain Lands*, 144 F. Supp. 206, a road was taken and the question of "just compensation" turned on whether the construction of a substitute facility was necessary. The court held that that issue of necessity was properly left to the jury:

"In the average condemnation proceeding, many factors must be considered in arriving at just compensation, factors which are only established and available after the exercise of a fact-finding process. There appears to be no reason for introducing a trial by jury into condemnation proceedings unless the jury's province is broad enough to include the weighing of evidence which directly relates

truly cannot be resolved without considering that question.

There seems to be no reason why the jury chosen by Congress to decide the final issue of "just compensation" should be denied the power to determine the subordinate issues of fact upon which the jury's final verdict must rest.

There are powerful forces loose in this country that deprecate the use of juries. The Department of Justice and other federal agencies [3] often seem to dislike juries in

to the issue of compensation. It would seem that in this case the determination as to whether any substitute facilities are required at all is indeed a part of the 'issue of just compensation,' one of the factors to be taken into account by the jury in reaching its verdict." *Id.*, at 214.

[3] The present Rule 71A, which in absence of an Act of Congress gives the courts discretion to have the issue of compensation decided by a commission of three, was inspired by the Act governing condemnations by the TVA which required the appointment of a commission in all cases, 48 Stat. 70. See Notes of Advisory Committee, 28 U. S. C., following Rule 71A. But that Act was amended in 1968. See 82 Stat. 885, 16 U. S. C. § 831x (1964 ed., Supp. IV). Under the bill as reported out of the Senate Committee on Public Works either party had on demand "an absolute right to a jury trial." S. Rep. No. 930, 90th Cong., 1st Sess., 2. "Proponents of the legislation indicated that no landowner should be denied his basic right to a trial by jury involving the condemnation of his property. In addition, it was indicated that the absence of a right to a jury trial had generated friction between TVA and landowners which was seriously affecting the public relations of that agency." *Ibid.*

The Senate Committee stated: "While the committee makes no judgment as to the benefits of either the commissioner or jury-trial system, it does feel that a right to trial-by-jury is basic to our American way of life, and accordingly recommends adoption of this legislation." *Id.*, at 3.

That bill was amended on the floor of the Senate to modify the provision for an absolute right to jury trial by making Rule 71A applicable to TVA condemnation proceedings. The discussion in support of this amendment, however, again stressed the general

condemnation cases. In my Circuit, juries have unexpectedly risen up in favor of homeowners and against Washington, D. C., and granted "just compensation" in large sums, in retaliation, it is believed, against hardnosed officials who, with all the power of the central government, seek to plow them under. At other times the jury has acted differently and cut down the award.[4] Juries in these condemnation cases perform, in other words, an historic restraint on both executive and judicial power. See *Bushell's Case.* 6 How. St. Tr. 999, decided in 1670.

---

dissatisfaction with the commission system, and emphasized the right to jury trial in all but the most "extraordinary circumstances." 113 Cong. Rec. 36979–36981.

[4] See *John L. Roper Lumber Co.* v. *United States,* 150 F. 2d 329, where the jury refused the land owner any increment of value occasioned by the land's proximity to the project.