**UNITED STATES of America,
Appellant,**

v.

**1,071.08 ACRES OF LAND, YUMA AND MOHAVE COUNTIES, ARIZONA, and Alamo Land & Cattle Co., et al., Appellees.**

**Nos. 75–3201, 75–3507.**

United States Court of Appeals,
Ninth Circuit.

Nov. 28, 1977.

---

Robert L. Klarquist (argued), Washington, D. C., for appellant.

John D. Lewis (argued), of Holman & Lewis, Tempe, Ariz., J. Gordon Cook (argued), of Renaud, Cook, Miller & Cordova, Phoenix, Ariz., for appellees.

Before CHAMBERS, TUTTLE * and WALLACE, Circuit Judges.

CHAMBERS, Circuit Judge:

These consolidated appeals arose from the government's condemnation of 1,071.08 acres of land in west-central Arizona. The government seeks review of two jury awards, contending that the district court abused its discretion in ordering separate trials before different juries under Rule 42(b), Federal Rules of Civil Procedure. The government also asserts that the district court erroneously admitted evidence on the post-condemnation price of manganese in the later trial. We affirm the district court.

This case began as a single condemnation proceeding in which the United States acquired title to 1,071.08 acres of land (Tract 308) along the Bill William River in Arizona for use in the Alamo Dam and Reservoir Project, a United States Army Corps of Engineers flood control development. The government filed a declaration of taking pursuant to the Declaration of Taking Act, 40 U.S.C. § 258a et seq. and deposited $236,-250 as the estimated value of the land. An order was entered transferring title to the United States.

Prior to condemnation, interests in Tract 308 were held by three parties: the Alamo

---

* The Honorable Elbert P. Tuttle, Senior Circuit Judge, United States Court of Appeals, Fifth Circuit, sitting by designation.

Land & Cattle Company (Alamo), Colonel and Mrs. Perley M. Lewis (Lewis), and the Santa Fe Pacific Railroad Company. Only the interests of Alamo and Lewis are involved in these appeals.[1] Alamo owned surface rights in 1,064.98 acres; surface rights in the remaining 6.1 acres were held by Lewis. Lewis also owned mineral rights in 200 acres: the mineral rights under their 6.1 acres as well as those under 193.9 acres to which Alamo held surface rights.

Both Alamo and Lewis sought a jury trial to determine the value of their respective interests. After a trial date had been set, Lewis moved to postpone the trial, or, in the alternative, for a separate trial. This motion was based on the government's repeated failure to provide Lewis with reports prepared by their experts until less than 20 days before trial. These complicated geological reports went to the heart of the dispute between Lewis and the government: the value of the mineral interests. In support of his motion, Lewis stated that 20 days was insufficient time for the analysis, depositions, and further geological field studies necessary to refute the government's evidence. The district court ordered separate trials.

On the scheduled trial date, a jury trial was held on the value of Alamo's surface rights in 1,064.98 acres. The evidence established that Alamo used 232 acres for cattle ranching; another 238 acres was potential farm land. The remaining approximately 600 acres was unsuitable for either ranch or farming operations and was given a nominal value. The government did not present any evidence or request any instructions suggesting that the value of Alamo's interest in the surface should be diminished by Lewis' mineral rights to 193.9 acres of the Alamo property. The government's expert witnesses valued Alamo's interests from $186,500 to $230,000. In contrast, Alamo's expert estimated $514,000 to be just compensation. The jury returned a verdict of $454,000. The government's motion for a new trial, based partly on the

ground that the court improperly ordered separate trials, was denied.

Seven months later, the trial on the value of Lewis' interest was held before a different jury. At the beginning, the government renewed its objection to separate trials. The court overruled the objection, stating that the interests of Alamo and Lewis in the property were so divergent as to confuse a single jury. The government did not bother to introduce evidence of Alamo's interest to diminish the value of Lewis' mineral rights and requested no instructions on inconsistent uses of the property. Government witnesses testified that the interests were worthless, while witnesses for Lewis estimated the mineral rights to be worth from $400,000 to $470,513. The jury returned a verdict of $439,756.50. Judgment was entered and the government's motion for a new trial was denied. These appeals followed.

■ The principal question raised by these appeals is whether the district court abused its discretion by ordering separate trials. Rule 42(b) of the Federal Rules of Civil Procedure provides in pertinent part that

> [t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, *may* order a separate trial on any claim . . . .. (emphasis added).

The property interests of Lewis were a separate claim from the estate owned by Alamo. *See Burkhart v. United States,* 210 F.2d 602, 605 (9th Cir. 1954) (dictum); *United States v. 4.553 Acres of Land,* 208 F.Supp. 127 (N.D.Cal.1962). As the language of the Rule indicates, the district court had broad discretion to order separate trials; the exercise of that discretion will be set aside only if clearly abused. *See Carlstrom v. United States,* 275 F.2d 802 (9th Cir. 1960). In substance, the government argues that separate trials before different juries permitted duplicative awards based on inconsistent uses of the property in vio-

1. The Santa Fe Pacific Railroad Company owned the minerals interest under 600 acres to which Alamo held surface rights. Early in the condemnation proceedings the railroad disclaimed any right to compensation for the taking of their interests.

lation of the rule that property be valued as a single, integrated unit based on compatible and consistent uses. *See Eagle Lake Improvement Co. v. United States,* 160 F.2d 182 (5th Cir. 1947), *cert. denied,* 332 U.S. 762, 68 S.Ct. 64, 92 L.Ed. 347 (1947); *United States v. Carroll,* 304 F.2d 300, 306 (4th Cir. 1962). The order was therefore an abuse of discretion. We disagree.

The district court was required to balance the legitimate concerns voiced by the government about the risk of duplicate awards for the same property against the right of the property owner to have just compensation for his interests determined in a fair proceeding. *See United States v. Jones,* 109 U.S. 513, 519, 3 S.Ct. 346, 27 L.Ed. 1015 (1883) (owner entitled to produce evidence of value). In balancing those interests, the district court felt that separate trials were necessary. The articulated reason was that the interests of Alamo and Lewis were sufficiently divergent to confuse a single jury. On these facts, we find no abuse of discretion. The government's argument that the awards were based on inconsistent uses has superficial appeal. Use of land as a ranch or farm may be inconsistent with use of the same property for an open pit mine. However, it is not clear to us that mining of a portion of 193.9 acres on a 1,064.98 acre ranch so completely conflicts with cattle ranching or raises significant risk of duplicative awards. What risk there was could have been eliminated by the introduction of evidence of inconsistent uses at each of the trials. The government had ample opportunity to present such evidence and it neglected to do so.

Aside from the district court's articulated ground for the order, the government's procrastination in providing Lewis with its geological reports on the mineral interests may have so raised the specter of prejudice to Lewis' right to present his case on their value as to independently justify separate trials. As noted in *Gwathmey v. United States,* 215 F.2d 148, 156 (5th Cir. 1954), a district court may be required to order separate trials in a condemnation proceeding to give the owner a fair opportunity to establish just compensation for his condemned property. The government is in no position to complain about the order.

The government also asserts that testimony on the post-condemnation price of manganese was improperly admitted in the Lewis trial. The law is clear that Lewis is only entitled to the value of his interests as of March 14, 1969, the date of taking. *See United States v. Reynolds,* 397 U.S. 14, 16, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970). But the district court has discretion to admit relevant evidence. And the admission of improper evidence is to be ignored unless substantial rights of the parties are thereby affected. *See Moran v. H.W.S. Lumber Co.,* 538 F.2d 238, 243 (9th Cir. 1976); *Goodman v. United States,* 398 F.2d 879 (9th Cir. 1968). The single reference to the post-condemnation price of manganese was, at most, harmless error. The witness for Lewis who testified to the 1974 price did not give his estimate of value. And all other witnesses of Lewis, including the appraisers who testified, based their valuation on the 1969 price. The jury was given numerous instructions to value the property as of the date of taking. .

The district court is AFFIRMED.