On June 29 and November 21, 1979, and on February 8, 1980 the court entered orders in the above-identified case as follows:
*719 Before Friedman, Chief Judge, Cowen, Senior Judge, Davis, Nichols, Kashiwa, Kunzig, Bennett and Smith, Judges, en banc.
In connection with the oral argument to be held en banc by the court in November, the parties are hereby directed to file supplemental statements supplying the following information:
1. In finding 13 of his report filed June 14, 1978, the trial judge refers to the "normal high-water mark” of the Arkansas. What was the ordinary high-water mark of the Arkansas River in the vicinity of the plaintiffs 1834-acre tract of land prior to 1950 when the government constructed the cutoff?
2. In finding 63, the trial judge refers to the "normal high-water mark” of the River in the vicinity of plaintiffs property. Finding 62 indicates that the trial judge referred to the elevation at which the pool was maintained rather than the "ordinary high-water mark” of the River as that term is defined in the law of eminent domain. What are the facts as to the historical high-water mark of the River in the vicinity of the plaintiffs property before defendant’s dam was built and closed?
3. In its exceptions to the trial judge’s finding 20 (defendant’s exceptions at 6), defendant states that the 1969-70 condemnation was filed after plaintiff offered to sell the easement to the United States, and the offer had been accepted; also that since plaintiff was unable to perfect his title, a "friendly” condemnation was initiated to clear title. State the facts in full regarding this matter.
4. How much of the land allegedly taken by the government was entirely submerged before the construction of the cutoff in 1950?
5. Has the completion of the project authorized by the Act of 1946 and the operation of defendant’s dam increased the duration, frequency, and elevation of floods on lands in the vicinity of plaintiffs property as compared with floods occurring on the 1834 acres of plaintiffs land prior to the beginning of the project?
6. Are the surfaced lands, which are the subject of the claim for taking, needed for the continued operation of defendant’s navigational project?
Since the defendant’s brief and exceptions to the trial judge’s report were filed first, the defendant is directed to *720 file its statement first, on or before July 25, 1979; plaintiffs statement and response shall be filed on or before August 25,1979, and defendant’s reply shall be filed within 15 days thereafter. In each instance, the parties shall support their statements by citations to specific pages of the transcript, documentary exhibits, stipulations or admissions by the adverse party which are relied upon to support their statements.
November 21, 1979
After hearing oral argument en banc in this difficult and complicated case, and after again considering the briefs of the parties and the supplemental statements furnished by them, the court finds, with regret, that it is necessary to remand this case to the trial judge to make additional findings of fact and/or conclusions of law.
The trial judge’s decision is vacated, because we believe it rests in part upon erroneous conclusions of law. The trial judge concluded that when the former channel of the Arkansas River filled in and became non-navigable after the Government constructed the cutoff, the Government’s navigation servitude over the non-navigable channel was lost. He held that the continued existence of the servitude depended upon "whether the Arkansas remains an artery of interstate commerce.” This conclusion appears to be contrary to the decision of the Supreme Court in Oklahoma v. Atkinson Co., 313 U.S. 508, 523 (1941). See also, United States v. Commodore Park, Inc., 324 U.S. 386, 393 (1945) and Allen Gun Club v. United States, 180 Ct.Cl. 423, 429 (1967).
The court does not agree that when the Government purchased the 248.26 acres from plaintiff in 1950, the purchase price was reduced by the value of the benefit accruing to the plaintiff in the form of emerged land which plaintiff now says is worth $1,690,000. Contrary to the trial judge’s holding, it is also the view of the court that there is no irrebuttable presumption that in the 1970 condemnation, the amount paid was reduced by the extent of any benefit accruing to plaintiff through the construction of the cutoff.
In addition, the court finds that the following are crucial issues of fact (or mixed questions of law and fact) which *721 have not been found by the trial judge or are not readily ascertainable from undisputed evidence of record:
1. Although it is well settled that the Government’s navigation servitude extends to all submerged property within the bed of a navigable river from ordinary high-water mark on one side to ordinary high-water mark on the other, there is a factual dispute as to how much of the land in controversy was located above the ordinary high-water mark of the river prior to the construction of the 1950 cutoff. How much of that land is located within the area of the former bed of the river and how much outside the former bed?
2. It is undisputed that at least part of the land in issue emerged from the bed of the river after the cutoff, but there is a dispute as to whether the surfaced lands, which are the subject of plaintiffs claim, are necessary to the continued operation of defendant’s "navigational project or its purpose.” See Bonelli Land and Cattle Co. v. Arizona, 414 U.S. 313, 329 (1973).
3. Another question, the answer to which is essential to the disposition of this case, is whether the lands in issue here "were probably within the scope of the project from the time the Government was committed to it.” United States v. Miller, 317 U.S. 369, 377 (1943); United States v. Reynolds, 397 U.S. 14, 21 (1970), and United States v. 62.17 Acres of Land, etc., in Jasper County, 538 F. 2d 670 (5th Cir. 1976). In this connection the trial judge should determine whether or not, at the time of the 1950 cutoff, the Government was committed to the project which later caused the flooding of plaintiffs lands for which compensation is now sought.
4. Have the benefits which plaintiff has received as a result of the Government’s activities been greater than the damage he has sustained? United States v. Sponenbarger, 308 U.S. 256, 266-67 (1939); United States v. Miller, 317 U.S. 369 (1943); John B. Hardwicke Co. v. United States, 199 Ct. Cl. 388, 467 F. 2d 488 (1972). Defendant claims that plaintiff is suing for the taking of land that emerged from the bed of the river as a result of Government activities. Also, the defendant asserts, but plaintiff does not agree, that the completion of the project authorized by the Act of 1946 and the operation of the dam has decreased the *722 duration, frequency and elevation of floods on lands in the vicinity of plaintiffs property as compared with the floods which occurred on the 1834 acres of plaintiffs land prior to the beginning of the project.
It is Therefore Ordered that the case is remanded to the trial judge with instructions to make findings of fact on each of the issues -listed above, and where there are mixed questions of law and fact, to state his conclusions of law thereon. The trial judge may rely on evidence that is already of record, but he should also permit either party to offer any additional non-cumulative evidence which is relevant and material.
In connection with the 1969-70 condemnation (finding 20), the trial judge is instructed to make findings of fact stating whether or not: (a) prior to the condemnation action, plaintiff made a written offer to sell the easement to the defendant and the offer was accepted by defendant; (b) defendant advised plaintiff that it was necessary to file a friendly condemnation suit to clear title to the easement; (c) the district court’s judgment was based upon and incorporated the offer and acceptance (option contract), and (d) the option contract, any other agreement of the parties, or the judgment of the district court contained a provision that the $400 paid by the defendant for the easement took into consideration "by way of reducing the amount of compensation or damages any special or direct benefits” accruing to plaintiff as a result of defendant’s navigation project, and if so, to what extent was the compensation paid plaintiff reduced by the value of said benefits?
February 8, 1980
This case comes before the court on plaintiffs motion of December 10, 1979 for clarification of the court’s order entered November 21, 1979. Plaintiff inquires if there is still open for further proof, the issue as to whether the benefits accruing to plaintiff in the form of emerged land were taken into account in determining the compensation for the 1950 taking. In order to avoid further delay in the proceedings before the trial judge, the court hereby declares that in its order of November 21, 1979, this issue was resolved against the plaintiff.