766 F.2d 685
 NATIONAL RAILROAD PASSENGER CORPORATION, A District of
Columbia Corporation, Plaintiff-Appellee, Cross-Appellant,
v.
ONE 25,900 SQUARE FOOT MORE OR LESS PARCEL OF LAND IN THE
CITY OF NEW LONDON, COUNTY OF NEW LONDON, STATE OF
CONNECTICUT; Ida A. DeNoia, and June D. Barrows, Executrix
of the Estate of Vito J. DeNoia, Defendants,
Ida A. DeNoia and June D. Barrows, Executrix of the Estate
of Vito J. DeNoia, Defendants-Appellants, Cross-Appellees.
 Nos. 899, 900, Dockets 84-7825, 84-7881.
 United States Court of Appeals,
Second Circuit.
 Argued March 18, 1985.
Decided June 27, 1985.
 
 Allan B. Taylor, Hartford, Conn. (Thomas J. Groark, Jr., Day, Berry & Howard, Hartford, Conn., of counsel), for defendants-appellants.
 Emmet L. Cosgrove, New London, Conn. (Waller, Smith & Palmer, New London, Conn., of counsel), for plaintiff-appellee.
 Before MESKILL and PRATT, Circuit Judges, and PALMIERI,* District Judge.
 MESKILL, Circuit Judge:
 This is an appeal from a judgment entered in the United States District Court for the District of Connecticut after a five day jury trial before Goettel, J., sitting by designation. Federal jurisdiction is based on section 305(d) of the Rail Passenger Service Act, 45 U.S.C. Sec. 545(d) (1982).
 
 
 1
 The jury's verdict valued appellants' condemned land at $122,450. Appellant landowners appealed, claiming that the trial court erred in its instructions to the jury. National Railroad Passenger Service Corporation (Amtrak), the condemnor, cross-appealed.
 
 
 2
 We reverse the judgment of the district court because the trial judge erroneously submitted to the jury issues that were for the judge to determine. Furthermore, we determine that, as a matter of law, appellants' land at the time of condemnation had access to the public road. The cause is remanded to the district court for a new trial in accordance with this decision.
 
 
 3
 * This is an eminent domain proceeding which was instituted by Amtrak in February 1982 pursuant to section 305(d) of the Rail Passenger Service Act, 45 U.S.C. Sec. 545(d). The litigation involves the proper valuation of a parcel of waterfront land in New London, Connecticut. The land is bordered on the north/northwest by an Amtrak right-of-way. The remainder of its perimeter fronts on the Thames River. The primary dispute at trial concerned whether the parcel had, at the time it was taken, access to a public road.
 
 
 4
 The waterfront parcel (Tract 2) was owned by Ida and Vito DeNoia, appellants herein.[1] The DeNoias had previously owned, as well, the adjacent piece of land to the north of the railroad right-of-way. This parcel (Tract 1) fronted on a public street. In April 1977, Tract 1 was taken by the Redevelopment Agency of the City of New London. The action of the Redevelopment Agency spawned two lawsuits in the Connecticut Superior Court for the New London Judicial District. The first, decided by the Honorable Abraham S. Bordon, State Referee, awarded to the DeNoias, in addition to just compensation for Tract 1, an amount to compensate for the diminution in value of Tract 2 caused by the taking of Tract 1. DeNoia v. Redevelopment Agency, No. 050055 (Conn.Super.Ct. June 13, 1979) (DeNoia I ), reprinted in J.App. at 10. The second, which was filed before but not resolved until after Amtrak took Tract 2, was decided by the Honorable Paul J. Driscoll, State Referee. DeNoia v. City of New London, No. 62532 (Conn.Super.Ct. Oct. 12, 1982) (DeNoia II ), reprinted in J.App. at 25. Explicitly adopting Judge Bordon's prior decision in DeNoia I "as appropriate to and determinative of the issues" in DeNoia II, J.App. at 31, Judge Driscoll awarded to the DeNoias and against the City of New London damages for the deprivation of access to Tract 2 from April 1977, when the Redevelopment Agency condemned Tract 1, to February 1982, when Amtrak condemned Tract 2. J.App. at 34.
 
 
 5
 Amtrak filed its Declaration of Taking covering Tract 2 on February 23, 1982. It subsequently filed a motion in limine. Amtrak sought to preclude appellants from claiming or attempting to prove at trial that Tract 2 had access to a public highway. Amtrak contended that DeNoia I and DeNoia II had conclusively determined that no such access had survived the Redevelopment Agency's taking of Tract 1. Further, Amtrak claimed, the state courts had fully compensated the DeNoias for the taking of Tract 2's access to the public way. Judge Clarie, who did not later preside at the trial, denied the motion, reasoning that DeNoia II "le[ft] open the possibility that contractual rights of access had been created and [were] attached to [the] contested property" when Amtrak filed its Declaration of Taking. National Railroad Passenger Corp. v. One 25,900 Square Foot More or Less Parcel of Land, No. H-82-221 (D.Conn. June 6, 1984) (order denying plaintiff's motion in limine), reprinted in J.App. at 3. The order explicitly directed that the DeNoias "should be allowed to develop this theory at trial." Id.
 
 
 6
 The central issue--access vel non --was thus apparent early in the pretrial stages of the litigation. The value of a waterfront parcel without access to a public way would obviously be much below the value of that parcel with access. This self-evident correlation was reflected in the appraisals commissioned by the parties. Those appraisers who made a distinction assigned substantially higher values to the parcel with access. For example, Norman Benedict, who testified for Amtrak and presented the lowest appraisal by far, valued Tract 2 at $67,500 without access and one and one-half times that amount, $103,500, with access. Ronald Glendinning, who was commissioned by Amtrak but was unable to testify at trial, valued the tract with access at almost four times its value without--$405,000 as against $104,000. Finally, James Platt, who appraised the property at Amtrak's request in 1980 and was subpoenaed by the DeNoias to testify at trial, valued the land at $567,000 with and $165,000 without access.
 
 
 7
 In addition to the appraisals, the parties presented considerable evidence on the issue of Tract 2's access. A major focus of the parties' proof involved the two prior state court decisions, specifically, their meaning and their impact on the issue of access. The parties agreed that the question of access was a question of law and for the judge to decide. Accordingly, Amtrak requested the court to instruct the jury that Tract 2 had no access to the public road and the DeNoias moved for a directed verdict on the issue of access. Tr. at 935.
 
 
 8
 From the very outset it seems to have been clear that the parties and the trial judge had conflicting approaches to how the access question should be resolved. In his opening remarks, the judge indicated to the members of the jury that in determining the value of Tract 2 they would have to decide whether or not the land had access to a public road. Tr. at 7. Thus, it was no surprise when he denied both Amtrak's requested access charge and the DeNoias' motion. In making the latter ruling, the judge stated that he was "going to leave the question of access, just like the issue of value, to the Jury." Tr. at 938. Although Amtrak urges us to conclude otherwise, we believe that the trial judge was true to his word. The charge viewed in its entirety, Tr. at 1018-58, and the judge's responses to the parties' exceptions to the charge, Tr. at 1060-61, as well as the statements quoted above, clearly reveal that the issue of access was sent to the jury. In addition, both counsel vigorously argued the access question in their closing arguments to the jury.
 
 
 9
 Concomitantly, the judge instructed the jury to interpret the prior state court decisions, DeNoia I and DeNoia II, and to follow them in determining the existence and nature of Tract 2's access, if any, to the public way. To guide the jurors in this task, after instructing them to follow the decisions of the state courts, Tr. at 1038, and before reading aloud the pertinent parts of those opinions, Tr. at 1039-46, the court briefly explained the system of the common law, emphasizing its dependence on precedent.
 
 
 10
 The jury deliberated for less than forty minutes before delivering its general verdict finding the fair market value of Tract 2 at the time of condemnation to be $122,450. Amtrak having already deposited $104,000 towards the condemnation award, judgment entered for $18,450 plus interest.
 
 
 11
 Appellants raise three claims of error. First, they argue that the trial court erred in submitting the question of access to the jury. Second, they argue that the court erred in instructing the jury to interpret and to apply accordingly, to the determination of access vel non, the two state court decisions. Third, appellants argue that their motion for a directed verdict on the access question should have been granted.
 
 
 12
 We have already rejected Amtrak's argument that the trial judge did not, in fact, send the access issue to the jury but rather instructed the jury that Tract 2 had access as a matter of law. Amtrak also contends that the state court decisions were properly before the jury because they were relevant to the nature and value of Tract 2's access and they were within at least one of the hearsay exceptions. In the alternative, Amtrak claims, even if the jury charge was erroneous, the errors were harmless in light of the general verdict. Amtrak further asserts that the verdict must stand because it was supported by the evidence. Finally, Amtrak warrants that if we find no error, we should deem its cross-appeal withdrawn. If, however, we do find error, Amtrak requests us to hold that the trial court committed reversible error in failing to instruct the jury that Tract 2 had no access.
 
 II
 
 13
 In addressing a claim of error in the court's instructions to the jury, we must decide whether the entire charge, viewed in light of all of the evidence, would tend to confuse or mislead the jury as to the principles of law that apply to the facts. Norfleet v. Isthmian Lines, Inc., 355 F.2d 359, 362-63 (2d Cir.1966). A charge that appears likely to have left the jury "highly confused" may, on that ground alone, be reversed. DeLima v. Trinidad Corp., 302 F.2d 585, 587 (2d Cir.1962) (Marshall, J.). As a general rule, we will reverse the judgment of a trial court and grant a new trial because of an error in the jury instructions only if, based on a review of the record as a whole, we are persuaded that the error was prejudicial. Connors v. McNulty, 697 F.2d 18, 21 (1st Cir.1983). Our determination of whether error was prejudicial is guided by the harmless error doctrine as incorporated in Fed.R.Civ.P. 61. Rosebud Sioux Tribe v. A & P Steel, Inc., 733 F.2d 509, 517 (8th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984); Farnarjian v. American Export Isbrandtsen Lines, Inc., 474 F.2d 361, 364-65 (2d Cir.1973). That doctrine cautions that a judgment should stand unless it appears inconsistent with substantial justice because it followed from an error that affected the substantial rights of the parties. See Fed.R.Civ.P. 61.
 
 
 14
 Thus, our analysis of the disputed portion of the charge must proceed in two stages. First, we must determine whether it was error for the court to send the issue of access to the jury. If it was, then we must decide whether, in the context of the whole record, the error was prejudicial.
 
 
 15
 The parties' arguments addressing the first stage of our inquiry concentrate almost exclusively on the traditional division between the court and the jury of questions of law and questions of fact, respectively. Thus, appellants claim that there was error because the access question was a matter of law for the judge to decide. Amtrak agrees that the issue was a question of law but contends that there was no error because the judge did decide it. Alternatively, on its contingent cross-appeal, Amtrak argues that the judge should have decided the question and he should have decided that there was no access. In focusing on the traditional fact/law division, both the parties and the trial judge have misperceived the unique procedures attendant to this type of suit.
 
 
 16
 There is no federal constitutional right to a jury in eminent domain proceedings. Bauman v. Ross, 167 U.S. 548, 593, 17 S.Ct. 966, 983, 42 L.Ed. 270 (1897). What narrow right there is in federal condemnation cases derives solely from Fed.R.Civ.P. 71A(h), which provides that, except in certain circumstances not operative here, "any party may have a trial by jury of the issue of just compensation by filing a demand therefor," unless the trial court in its discretion determines that a court-appointed commission would better serve the interests of justice. With the single exception of the issue of just compensation, all issues of fact and law are for the trial judge to decide.
 
 
 17
 The Supreme Court addressed the scope of "the issue of just compensation," Fed.R.Civ.P. 71A(h), in United States v. Reynolds, 397 U.S. 14, 19-21, 90 S.Ct. 803, 806-808, 25 L.Ed.2d 12 (1970). The Court in Reynolds explained that the Rule permits the jury to decide only the "precise issue of the amount of compensation to be awarded," a decision which is to be made "within ground rules established by the trial judge." Id. at 20, 90 S.Ct. at 807. Noting that the Rule permits the trial judge the discretion to dispense with the jury entirely, the Court recognized the "clear intent" of the Rule "to give the district judge a role in condemnation proceedings much broader than he occupies in a conventional jury trial." Id.
 
 
 18
 We think that the question whether or not Tract 2 had access to a public road falls outside the narrow constraints of the jury's domain in eminent domain proceedings. The answer to the question is one of the ground rules that guides the jury's decision on the precise issue of the amount of compensation. Therefore, we hold that it was error for the trial judge to submit the access issue to the jury.
 
 
 19
 The second prong of our analysis, whether the error in the charge was prejudicial, requires us to comment on the resolution of the access question. While neither of the state court decisions is as explicit as it might have been, we believe that together they established that Tract 2 did in fact have access to a public road. Real property law is a subject entrusted almost exclusively to the states. Where two state courts have already decided that a parcel of land has certain appurtenant rights, therefore, it would be particularly presumptuous of the federal courts to contradict those holdings. Thus, the trial judge below should have concluded and should have instructed the jury, in accordance with DeNoia I and DeNoia II, that Tract 2 had access.
 
 
 20
 The Takings Clause of the Fifth Amendment guarantees that the government shall not take private property for public use without just compensation. U.S. Const. Amend. V. The Supreme Court has explained that this guarantee means that the owner of the property should "be put in the same position monetarily as he would have occupied" but for the taking. United States v. Reynolds, 397 U.S. at 16, 90 S.Ct. at 805. Thus, the owner is entitled to be compensated for the full, fair market value of the property at the time of condemnation, which is generally described as " 'what a willing buyer would pay in cash to a willing seller.' " Almota Farmers Elevator & Warehouse Co. v. United States, 409 U.S. 470, 474, 93 S.Ct. 791, 794, 35 L.Ed.2d 1 (1973) (quoting United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 280, 87 L.Ed. 336 (1943)).
 
 
 21
 Further elaboration is hardly necessary to make clear that the DeNoias were constitutionally entitled to be awarded the fair market value of a waterfront parcel of land with access to a public road. We conclude that the jury charge probably deprived them of their just compensation. Asked to make the threshold determination of whether or not Tract 2 had access, the jury returned a verdict from which it is impossible to discern how the issue was resolved. After reviewing the entire record, we believe it quite likely that the jury was so hopelessly confused by the charge that it chose an amount essentially out of a hat. It is also very possible that the jury determined that Tract 2 had no access and tailored its award accordingly.
 
 
 22
 In sum, we are persuaded that the error in the charge prejudicially affected the right of the DeNoias to be compensated for the fair market value of their property at the time of the taking.[2] It would be inconsistent with substantial justice to permit the trial court judgment to stand. The judgment of the district court is reversed and this case is remanded to the district court for a new trial on the issue of just compensation for Tract 2, a waterfront parcel of land with access to a public road.
 
 
 
 *
 Honorable Edmund L. Palmieri, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 June D. Barrows, executrix of Vito DeNoia's estate, was substituted as a party when during the pendency of these proceedings Mr. DeNoia died
 
 
 [2]
 Accordingly, we do not reach the other claims of error advanced by the parties