**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 04-1480**

─────────────

NATIONAL RAILROAD PASSENGER CORPORATION, a/k/a
Amtrak,

Plaintiff - Appellee,

versus

CATALINA  ENTERPRISES,  INCORPORATED  PENSION
TRUST,

Defendant - Appellant,

and

1.578 ACRES MORE OR LESS OF LAND, located at
6301 Quad Avenue in Baltimore City, Maryland;
STERN  FAMILY  INVESTMENTS,  LLLP;  G.  REX
SIZEMORE; CATALINA ENTERPRISES, INCORPORATED;
UNKNOWN  OTHERS;  NANCY  C.  ROBERTSON;  GENERAL
VECTOR  CORPORATION;  BANK  OF  AMERICA,  as
successor  in  interest  to  Maryland  National
Bank; EDWARD J. MAKOWSKI, JR.; BALTIMORE CITY,
State of Maryland,

Defendants,

versus

DAVID  P.  STERN,  Trustee;  WHITING-TURNER
CONTRACTING  COMPANY;  KYRIAKOS  P.  MARUDAS;
RONALD U. SHAW; BANK OF AMERICA; EDWARD J.
MAKOWSKI,

Parties in Interest.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Paul W. Grimm, Magistrate Judge. (CA-00-3569-PWG)

Argued: November 30, 2004            Decided: September 30, 2005

Before WIDENER, MICHAEL, and MOTZ, Circuit Judges.

Affirmed by unpublished per curiam opinion. Judge Widener wrote a dissenting opinion.

**ARGUED:** Douglas Richard Taylor, Rockville, Maryland, for Appellant. Natalie Paige Drinkard, HODES, ULMAN, PESSIN & KATZ, P.A., Towson, Maryland, for Appellee. **ON BRIEF:** Patricia McHugh Lambert, HODES, ULMAN, PESSIN & KATZ, P.A., Towson, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

I.

This is an eminent domain case between plaintiff National Railroad Passenger Corporation (Amtrak) and defendant Catalina Enterprises (Catalina).  This case began on December 5, 2000 when Amtrak, using the power of condemnation conferred on it by Congress under 49 U.S.C. § 24311, filed its complaint in condemnation, and for possession of, certain lands in the district of Maryland.  The property at issue is approximately 1.578 acres of land which is improved by a warehouse of approximately 32,396 square feet. Approximately 16,800 square feet of the warehouse had been damaged by a fire in 1992 and had not been repaired or reconstructed at the time of the taking.  The parties consented to a magistrate judge's jurisdiction and the case was assigned to a magistrate judge.  The defendant requested that the question of just compensation be submitted to a jury, which was denied on March 21, 2001.  The case was then assigned to a land commission, consisting of three retired state judges, which held a five-day hearing in the matter, and determined that the compensation for the property was $305,242. The district court conducted a hearing on defendant's objections and opposition to the land commissioners' report on February 2, 2004, in which it applied a de novo standard of review. The district court overruled the objections to the land commissioners'

3

report and adopted its findings of fact and conclusions of law. The report of the land commissioners was filed on March 11, 2004. Judgment was then entered on March 12, 2004. Defendant appeals the orders of the district court, which it asserts prevented it from having a fair trial.

Catalina first asserts that the district court's March 12, 2002 order wrongfully precluded it from sufficiently completing discovery on the issue of the cost of repairing the warehouse, that the court's February 4, 2003 order failed to provide an adequate opportunity to complete discovery on that issue, and that the district court abused its discretion in not granting an extension to file an expert's report, due to a blizzard. Defendant also challenges the district court's denial of its request for a jury trial. Defendant also argues that the district court erred both in denying its motion in limine regarding plaintiff's hybrid witness and in concluding that the estimate to repair the property from an earlier lawsuit had been adopted by Catalina's witness. Catalina lastly asserts that the district court erred in determining that just compensation for the property was $305,242. For the reasons stated below, we affirm the judgment of the trial court.

4

II.

Catalina contends that the trial court erred in denying its request for a jury trial in this case. The denial of Catalina's request for a trial by jury in this case is governed by the abuse of discretion standard. United States v. Keller, 142 F.3d 718 (4th Cir. 1998). There is no Constitutional right to a jury trial in eminent domain proceedings. United States v. Reynolds, 397 U.S. 14, 18 (1970) (citing Bauman v. Ross, 167 U.S. 548, 593 (1897)). Federal Rule of Civil Procedure 71A(h) explicitly gives the district court discretion in determining whether or not to grant a jury trial, specifically stating:

> [A]ny party may have a trial by jury of the issue of just compensation by filing a demand therefor within the time allowed for answer or within such further time as the court may fix, unless the court in its discretion orders that, because of the character, location, or quantity of the property to be condemned, or for other reasons in the interests of justice, the issue of compensation shall be determined by a commission of three persons appointed by it . . . .

Fed. R. Civ. P. 71A(h). This rule "gives the trial court discretion to eliminate a jury entirely." United States v. Reynolds, 397 U.S. 14, 20 (1970); Accord Keller, 142 F.3d at 721.

In this case, the district court exercised its discretion and determined that the issue of just compensation should be determined before the land commissioners. The district court identified reasons for this determination as the existence of a standing land commission for the district; the peculiar nature of land

5

condemnation cases involving commercial property; and the judicial and real estate experience of the land commissioners. In our opinion, this decision was a permissible exercise of the district court's discretion under Rule 71A(h). There is nothing in the reasons given by the district court to support Catalina's claim that the denial of a trial by jury was an abuse of discretion. On appeal, Catalina takes the position that Amtrak was allowed to change its position as to a jury trial on account of a change in Fed. R. Civ. P. 53 and infers that this required the granting of its motion for trial by jury. Any such action which has been so taken by Amtrak, the court does not consider to be a sufficient reason to support a holding of an abuse of discretion in the district court's denial of Catalina's motion.

The denial of trial by jury is affirmed.


                              III.

Catalina also contends that the district court erred by preventing it from adequately completing discovery and presenting evidence on the issue of the cost of repairing the warehouse. Catalina takes issue with two orders of the district court to support this argument. As Catalina concedes, Brief of Appellant at 16, we review the challenged orders for abuse of discretion.

The complaint in this case was filed on December 5, 2000; discovery was contentious. In an effort to resolve one discovery

dispute, on October 25, 2001, the district court issued an order requiring Catalina to submit the report of its appraisal expert, Richard H. Nichols, within ninety days. J.A. 137. On January 16, 2002, Catalina moved that it be allowed an additional thirty days to submit Mr. Nichols' report because that report assertedly relied on another expert's opinion as to the cost of repair and reconstruction and the other expert had unexpectedly died on January 8. J.A. 202-203. On January 22, 2002, the district court held a conference to resolve this and other discovery matters. J.A. 207-242. The court granted the thirty days extension. J.A. 224, 243.

On February 11, 2002, Catalina submitted Mr. Nichols' report but moved for an extension of time until March 30, 2002 to submit the report of its additional experts (now six of them) on repair and reconstruction. J.A. 249-52. On March 12, 2002, the district court denied that motion reasoning that the issue of repair and reconstruction costs was of "slight, if any relevance," not warranting the considerable expense entailed in the creation of "six expert reports and perhaps an equal number of rebuttal experts." J.A. 278. This March 12, 2002 order is the first order Catalina challenges.

Even assuming the district court abused its discretion in issuing this order, that abuse was cured when the court later modified its order to permit Catalina the opportunity to designate

a repair and reconstruction expert. Seven months after the issuance of the March 12, 2002 order, on October 31, 2002, Catalina moved for modification of the March 12 order to permit it additional time to submit the reports of its repair experts. J.A. 497-504. On February 4, 2003, the district court held a hearing on the matter, in which Catalina clarified that even though the fire-damaged building had been torn down in the preceding seven months, it would like to "have a witness, a cost estimator or contractor be able to express an opinion regarding the cost of repair." J.A. 613. Given expert testimony that repair and reconstruction, although an "unusual" element in determining valuation, was not "unheard of," J.A. 597, the court modified its March 12, 2002 order. It permitted Catalina thirty days to disclose a "contractor, or a cost estimator" and submit that expert's report on repair costs. J.A. 617.

In doing so, the court warned Catalina:

. . . the pace has not been exemplary. I will be candid, there have been times when I have been tempted to reach the conclusion that [Catalina] has not been acting with the degree of concern to get this thing resolved that I thought was appropriate. . . . <u>I will make it crystal clear that these deadlines will not be modified, they will be met or they are gone</u>.

J.A. 616-617 (emphasis added). On February 5, 2003, the court issued a written order confirming this oral order; the written order provided <u>inter</u> <u>alia</u> that Catalina had 30 days -- until March 6, 2003 -- to designate "a general contractor or a cost estimator"

8

on the issue of repair costs and to submit his report. The court reiterated that the order would "not be changed absent extraordinary circumstances." J.A. 631-632 (emphasis added).

Nevertheless, on February 28, 2003 Catalina again moved for an extension of time. Catalina stated that after ten days it had located a repair expert, D. Neil Sinclair, but could not submit his report because a February snowstorm had prevented Mr. Sinclair from visiting the site and so preparing his report. J.A. 633-34. Amtrak objected to the motion on numerous grounds, noting inter alia that the snowstorm did not prevent Catalina from fulfilling its other discovery obligations under the rules; yet Catalina had failed to notify Amtrak of Mr. Sinclair's qualifications, rate of compensation, list of publications, or list of cases in which he had testified -- all of which are required by Fed. R. Civ. P. 26 -- and had failed to contact counsel for Amtrak to make arrangements to visit the site or discuss the issue, as required by the Local Rules. J.A. 653E-M.

On April 7, 2003, the district court denied Catalina's motion for extension J.A. 690 -- this is the second order that Catalina challenges on appeal. The court assumed, without deciding, as Catalina proffered, that the excuses offered for the delay "are not because of Pension Trust" but decided that they did not warrant a modification of the deadline. The district court acted pursuant to Rule 37(c) and found that Catalina had not demonstrated

9

"substantial justification" for its failure to meet the deadlines imposed by the court in its order of February 4, 2003. It found, further, that Amtrak would be prejudiced by granting additional time.

Rule 37(c)(1) expressly provides a district court with discretion to penalize a party who fails -- "without substantial justification" -- to comply with procedural rules and court orders. No finding of fault or "bad faith" is required prior to imposition of these sanctions. We are of the opinion the findings of the district court are essentially factual and are not clearly erroneous. Its decision to preclude the admission of the testimony of the expert as to the cost of repairs was not an abuse of discretion and is affirmed. See Mut. Fed. Sav. & Loan v. Richards & Assocs., 852 F.2d 88 (4th Cir. 1989); cf. Rabb v. Amatex Corp., 757 F.2d 996 (4th Cir. 1985).


IV.

There was no reversible error in admitting the testimony of James Jost offered by Amtrak as an hybrid witness - part expert, part fact. There was also no reversible error admitting an estimate of repair damage prepared by Catalina's insurance company and used in an earlier law suit.

V.

Catalina's final contention is that the district court erred in determining that it had failed to prove by a preponderance of the evidence that the resulting value from the repairs justified the necessary expenditures, and therefore determining that just compensation was $305,242. To support this Catalina points to the fact that the land commissioners failed to discuss and consider the testimony of Mr. Nichols that it was economically feasible to repair the warehouse and any seller of the property would do so before selling. However, the district court rejected Mr. Nichols' repair cost opinions as not being persuasive.

Notably, the method each side depended on to ascertain value was the same and based largely on rental value of the premises. Amtrak's evidence of rental value was $20.00. Catalina's was $22.50. The finding of the land commissioners of $22 was not clearly erroneous, and we affirm.

The judgment of the district court is accordingly

AFFIRMED.

WIDENER, Circuit Judge, dissenting:

I respectfully dissent. While the reasons given by the majority usually justify an affirmance, in this case I think that a new trial is required for the reasons which follow.

## I.

There can be no doubt that the excluded evidence is the key to this case. Indeed, the district court commented that the "only real differences, and everybody agrees, is whether or not the repairs were feasible to the fire damaged property." The Land Commissioners noted this issue's importance as well. The Land Commissioners' report also expressly relied on Catalina's failure to submit reconstruction expert testimony in recommending an award in Amtrak's favor.

> Nevertheless, Catalina failed to introduce any competent evidence on which evidence of repair costs could be made. They failed to provide expert opinion that any steel or masonry could be used or, if some could be used, exactly how much and at what cost.

J.A. 1771.

The reason that the evidence was so crucial is simple: the area to be restored, the cost of which was disputed, constituted about one-half of the total square footage of the property. As the Land Commissioners observed, the parties' determinations of value per square foot were almost identical: $20 by Amtrak, and $22.50 by Catalina. Thus, the condemnation award would effectively have

12

doubled had Catalina's reconstruction-cost evidence been considered and credited.  On the other hand, exclusion possibly halved the award.

## II.

The district court erred by excluding evidence that should have been provisionally admitted, making it impossible for this court to assess whether the exclusion was harmless.

## A.

In this non-jury setting, the district court should have admitted relevant evidence of repair costs and disregarded any evidence that it found inadmissible or unpersuasive when rendering its decision.

In Multi-Medical Convalescent & Nursing Center of Towson v. N.L.R.B., 550 F.2d 974 (4th Cir. 1977), we expressed grave concern about an administrative law judge's "curtail[ing] development of potentially relevant lines of inquiry."  Id. at 976.  We recommended liberalized admission in non-jury trials:

> Professor Wright tells us that "the attitude now governing has been strongly stated by Judge Sanborn:  'In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not'."  The appellate courts have taken a similarly critical view of exclusionary rulings by administrative agencies.  Thus, we strongly advise administrative law judges:  if in doubt, let it in.

Id. at 978 (citations omitted).

This principle extends to all sorts of non-jury trials. See Eagle-Picher Indus., Inc. v. Liberty Mut. Ins. Co., 682 F.2d 12, 18 (1st Cir. 1982) ("a district court, sitting without a jury, might be well advised to admit provisionally all extrinsic evidence of the parties' intent, unless it is clearly inadmissible, privileged, or too time consuming, in order to guard against reversal") (emphasis added); Gulf States Utils. Co. v. Ecodyne Corp., 635 F.2d 517, 519 (5th Cir. 1981) (calling exclusion of "prejudicial" evidence in a bench trial a "useless procedure"). We expressly adopted Gulf States in Schultz v. Butcher, 24 F.3d 626 (4th Cir. 1994), finding that the district court's error in excluding evidence was not harmless because "a party was prevented from fully developing evidence relevant to a material issue." Id. at 632

The broader admissibility of evidence in bench trials is premised on the helpfulness of the practice in appellate review. Indeed, McCormick recommends that courts "provisionally admit all arguably admissible evidence, even if objected to[,] with the announcement that all admissibility questions are reserved until all the evidence is in"; the treatise explains that this "helps ensure that appellate courts have in the record the evidence that was rejected as well as that which was received." McCormick on Evidence § 60 (4th ed. 1992) (footnote omitted).

14

Given the Land Commissioners' reliance on the absence of reconstruction-cost testimony in support of Catalina, I believe that these principles apply to this case, where the excluded evidence spoke to not just a material issue, but the material issue. Cf. Schultz, 24 F.3d at 632. The district court should have admitted the evidence into the record and later decided the questions of admissibility and weight to be given the evidence.

B.

The report in question with respect to an estimate of repair costs was due on March 6, 2003, 30 days from the date of the February 4, 2003 hearing. It was offered for filing late, a reason given by Catalina being that Baltimore, in that period, had a snow storm, which turned out to be a blizzard, which was all or part of the reason offered for the delay. While the district court rejected the reasons given by Catalina for the late offering of the repair estimate, it stated in two places that it did not rely on those reasons for its decision not to admit the testimony of the expert who had been employed by Catalina. It stated, on April 7, 2003, "Even assuming without deciding, as Catalina proffers, that the excuses offered for the delay are not because of Pension Trust, such excuses do not warrant a modification of the deadline." J.A. 691. And, in deciding Catalina's objections to the Land Commissioners' finding, the district court stated:

15

> Now, because the Defendants in this case failed to comply with that order, the sanctions appropriate were under Rule 37 of the Federal Rules of Civil Procedure. They were sanctioned for failing to obey a court order
>
> They were not sanctioned under Rule 37 for failing to make Rule 26(A)(2)(b) disclosures, which has a different standard and is a more stringent standard.

J.A. 1928. Thus, the key evidence was held to be inadmissible and kept from the Land Commissioners because of the violation of a court order.

It is true the district court decided that Amtrak had been prejudiced by such failure, but it did not state how Amtrak was prejudiced. In particular, so far as this record shows, there was no delay on account of such failure, the letters from the expert with respect to the delay being dated February 27 and March 14, 2003. So far as we are advised, the case, at the time of the district court's order of April 7, 2003, had not been set for trial, and the trial of the case before the Land Commissioners was some five months later, in September, 2003. So whatever prejudice Amtrak may have suffered, it was not in a delay of the trial. In any event, any prejudice to Amtrak on that account, other than allowing Catalina to reach the merits of the controversy, could only have been in annoyance and additional expenses, if any. As we have mentioned before, Amtrak was in possession of the property and had been using the same for more than a year, so there was no denial of use.

16

Accordingly, I would vacate the judgment of the district court and grant a new trial.