**SPERRY CORPORATION and Sperry World Trade, Inc.,**
**Plaintiffs–Appellants,**

v.

**The UNITED STATES,**
**Defendant–Appellee.**

No. 88–1009.

United States Court of Appeals,
Federal Circuit.

Aug. 10, 1988.

John D. Seiver, Cole, Raywid & Braverman, Washington, D.C., argued for plaintiffs-appellants. With him on the brief were Alan Raywid and Susan Paradise Baxter, Washington, D.C.

Terrence S. Hartman, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendant-appellee. With him on the brief were James M. Spears, Acting Asst. Atty. Gen. and David M. Cohen, Director, Washington, D.C. Also on the brief were Russell Munk and Francine Barber, Dept. of the Treasury and Ronald Bettauer and Lisa Grosh, Dept. of State, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, COWEN, Senior Circuit Judge, and MAYER, Circuit Judge.

OPINION

MAYER, Circuit Judge.

Sperry Corporation and Sperry World Trade, Inc. (Sperry) appeal the judgment of

the United States Claims Court, 12 Cl.Ct. 736 (1987), upholding the constitutionality of the Iran Claims Settlement Act, which requires the United States to make a deduction from awards of the Iran–United States Claims Tribunal. Because the deduction is a taking in violation of the fifth amendment of the Constitution, we reverse.

## Background

On November 4, 1979, Iranian nationals seized the United States Embassy in Tehran, Iran, and took American citizens there as hostages. In response, ten days later President Carter declared a national emergency under the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701–06, and issued an executive order blocking the removal or transfer of "all property and interests in property of the Government of Iran, its instrumentalities and controlled entities and the Central Bank of Iran which are or become subject to the jurisdiction of the United States." Exec. Order No. 12170, 3 C.F.R. 457 (1980).

In July of 1980, Sperry filed suit against Iran and fifteen of its instrumentalities in United States district court alleging breach of contract, conversion of property, and interference with business relations. It obtained a prejudgment attachment of approximately $7 million against Iranian assets in the United States. *Sperry Corp. v. Islamic Republic of Iran*, No. 80–1614 (D.D.C. Oct. 24, 1980).

On January 19, 1981, the United States and Iran entered into a series of agreements, commonly known as the Algiers Accords, to end the hostage crisis and resolve other disputes between the two countries. A stated "purpose" of the Accords was "to terminate all litigation as between the Government of each party and the nationals of the other, and to bring about the settlement and termination of all such claims through binding arbitration." Declaration of the Government of the Democratic and Popular Republic of Algeria, *reprinted in* 19 Selected Documents, Bureau of Public Affairs, U.S. Department of State 2, 3 (Mar. 12, 1981). To this end, the

Accords called for the establishment of the Iran–United States Claims Tribunal (Tribunal) to hear claims against Iran by United States nationals. Awards by the Tribunal are "final and binding" and come from a "Security Account" established by Iran with an initial deposit of $1 billion, and in which Iran promised to maintain a minimum balance of $500 million until all Tribunal awards are paid. The United States agreed "to terminate all legal proceedings in United States courts involving claims of United States persons and institutions against Iran and its state enterprises, to nullify all attachments and judgments obtained therein, to prohibit all further litigation based on such claims, and to bring about the termination of such claims through binding arbitration." *Id.* The United States also agreed to transfer all Iranian assets held in the United States to Iran. Presidents Carter and Reagan issued executive orders implementing these terms, Exec. Order Nos. 12276–12285, 12294, 3 C.F.R. 104–118, 139–140 (1982), and the Supreme Court upheld them in *Dames & Moore v. Regan*, 453 U.S. 654, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981), which contains a comprehensive description and discussion of this program.

Sperry filed a claim with the Tribunal and entered into settlement negotiations with the Iranian government. A settlement paying Sperry $2.8 million received final approval from Iran in July 1982 and the Tribunal entered an award to that effect in September. The United States, however, deducted two percent from the award pursuant to a June 7, 1982 directive license issued by the Secretary of Treasury. 47 Fed.Reg. 25243. The stated rationale for the deduction, which was authorized by the directive license only after the deadline for filing claims with the Tribunal and after Sperry and Iran had agreed in principle to settle the claims, was to "reimburse the United States Government for costs incurred for the benefit of U.S. nationals who have claims against Iran." *Id.*

Sperry promptly filed suit in the United States Claims Court alleging that the fees were "illegally exacted" and requesting that the directive license be invalidated. In

a May 1, 1985 bench ruling, the court held the directive license unlawful and ordered return of the deduction. The court reasoned that under 31 U.S.C. § 9701, the Department of Treasury improperly charged for services provided by the Departments of State and Justice and that the government could not justify the decision to make a two percent deduction in the absence of evidence that the deduction was a reasonable attempt to match benefits and costs.

Before the Claims Court issued a written opinion or entered final judgment, and in response to the bench ruling, in August of 1985 Congress enacted the Iran Claims Settlement Act (Act), Pub.L. No. 99–93, Title V, §§ 501–505, 99 Stat. 437 (codified at 50 U.S.C. § 1701 note), which became Title V of the Foreign Relations Authorization Act, Fiscal Years 1986 and 1987. Section 502 of the Act provides for deductions of 1.5 percent from Tribunal awards of up to $5 million and of one percent on amounts in excess of $5 million. According to the Act, these deductions are "reimbursement to the United States Government for expenses incurred in connection with the arbitration of· claims of United States claimants against Iran before that Tribunal and the maintenance of the Security Account." The deductions were to be applied retroactively to the date the directive license was issued, June 7, 1982.

Shortly thereafter, the government suggested that the Iran Claims Settlement Act had mooted the case. Sperry responded that the Act is unconstitutional because it caused a taking of property in violation of the fifth amendment; denied Sperry equal protection of law by assessing only successful claimants; violated the origination clause, art. I, § 7, cl. 1, because it was revenue legislation originating in the Senate rather than the House of Representatives; and denied Sperry due process by its retroactivity. The Claims Court rejected these arguments and dismissed the case. Sperry reasserts them here.

## Discussion

Under the fifth amendment, "private property [shall not] be taken for public use, without just compensation." But the Supreme Court has yet to develop "any set formula for identifying a 'taking,'" *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 224, 106 S.Ct. 1018, 1026, 89 L.Ed.2d 166 (1986), so courts "[o]rdinarily ... must engage in 'essentially ad hoc, factual inquiries'" of the circumstances of each case. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426, 102 S.Ct. 3164, 3171, 73 L.Ed.2d 868 (1982) (emphasis added). In the perhaps usual case where governmental activities must be assessed to see if they so impair private property rights as to amount to a taking, these "inquiries" ·are guided by three factors of "particular significance." They are "(1) 'the economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations'; and (3) 'the character of the governmental action.'" *Connolly*, 475 U.S. at 225, 106 S.Ct. at 1026 (quoting *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed. 2d 631 (1978)). But this multifactor test is not invoked when there is a permanent physical occupation of property, *Loretto*, 458 U.S. at 432, 102 S.Ct. at 3174; *see Nollan v. California Coastal Comm'n*, —— U.S. ——, 107 S.Ct. 3141, 3145, 97 L.Ed.2d 677 (1987), which the Supreme Court has called a *per se* taking. *Loretto*, 458 U.S. at 433, 102 S.Ct. at 3174–75, *see FCC v. Florida Power Corp.*, 480 U.S. 245, 107 S.Ct. 1107, 1111, 1112, 94 L.Ed.2d 282 (1987).

*Loretto* said "that a permanent physical occupation is a government action of such a unique character that it is a taking without regard to other factors that a court might ordinarily examine." 458 U.S. at 432, 102 S.Ct. at 3174. In that event, the character of the governmental action is "determinative" of whether a taking has occurred, *id.* at 426, 102 S.Ct. at 3171, "without regard to whether the action achieves an important public benefit or has only minimal economic impact on the owner." *Id.* at 434–35, 102 S.Ct. at 3175. The degree of impairment is relevant only to the amount

of compensation due, not to whether or not there has been a taking. *Id.* at 437, 102 S.Ct. at 3177.

The case we have is a dispute over money which the government has permanently appropriated for its own use. The fifth amendment by its terms applies to all "private property," not only real property, as the government seems to believe. *See PruneYard Shopping Center v. Robins,* 447 U.S. 74, 82 n. 6, 100 S.Ct. 2035, 2041, n. 6, 64 L.Ed.2d 741 (1980). "Property rights in a physical thing have been described as the rights 'to possess, use and dispose of it.'" *Loretto,* 458 U.S. at 435, 102 S.Ct. at 3176 (quoting *United States v. General Motors Corp.,* 323 U.S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed. 311 (1945)). No one doubts that Sperry has lost these rights.

The government action here is akin to that in *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980), in which interest earned on funds paid by an interpleader complainant into the registry of a court pending disbursal to claimants was kept by the government. The Supreme Court said the government's "appropriation" of the interest is "analogous to the appropriation of the use of private property in *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946)," a physical invasion case, and is a taking. 449 U.S. at 163–64, 101 S.Ct. at 452. The Court has also observed that "'the multifactor inquiry [is] generally applicable to *nonpossessory* governmental activity.'" *Florida Power Corp.,* 107 S.Ct. at 1112 (quoting *Loretto,* 458 U.S. at 440, 102 S.Ct. at 3178) (emphasis added). We have a permanent, possessory activity by the government, so the *per se* approach of *Loretto* guides our decision.*

*Dames & Moore v. Regan,* 453 U.S. 654, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981), upheld the President's authority to nullify the attachments of Iranian assets, order the

transfer of the assets to Iran, and suspend claims in courts of the United States. It also said there is jurisdiction under the Tucker Act, 28 U.S.C. § 1491, to determine if the suspension of claims had led to a taking, *id.* at 689, 101 S.Ct. at 2991–92, notwithstanding 28 U.S.C. § 1502, which limits jurisdiction over claims arising out of treaties. We see this case as challenging an act of Congress, independent of any claim based on the Accords. So the Court's observation about section 1502 is not implicated.

Sperry had a prejudgment attachment of about $7 million in the district court against Iranian assets in the United States. It eventually was awarded $2.8 million by the Tribunal, but does not suggest that a taking occurred because the amount awarded was less than what it would have received from the court. So we need not enter that thicket. Sperry's point is that if it had not been forced to resort to the Tribunal because its court litigation was suspended and attachments dissolved, the deduction would not have been assessed, and it has to that extent been divested of its property, self-evidently without compensation, as a confiscatory cost recovery effort by the government.

The point is well taken. Sperry had a sufficient forum and remedy in the district court, the remedy secured by the prejudgment attachment, and it would have suffered no deduction from a judgment entered by the district court. The Tribunal fully paid Sperry's claim against Iran, but Congress has diminished the award by ordering the percentage withheld before the award was paid over to Sperry. The Tribunal award was the substitute for a judgment by a United States court, *cf. id.* at 687, 101 S.Ct. at 2990–91, and the deduction from it was a taking which transgressed the fifth amendment. *See Webb's Fabulous Pharmacies,* 449 U.S. at 163, 101 S.Ct. at 452. It must be returned to put

---

* In applying the multifactor takings analysis, *Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 225, 106 S.Ct. 1018, 1026, 89 L.Ed.2d 166 (1986), first looked to the nature of the governmental action and noted that the government did "not physically invade or *permanently*

*appropriate* any of the employer's assets for its own use." (Emphasis added.) If the Court had determined the government had permanently appropriated the *funds* in question, it would have been unnecessary to consider other factors.

Sperry "in the same position monetarily as [it] would have occupied if [its] property had not been taken." *United States v. Reynolds*, 397 U.S. 14, 16, 90 S.Ct. 803, 805, 25 L.Ed.2d 12 (1970).

By seizing a percentage of the awards of the Tribunal, the government has charged only successful claimants against Iran for the resolution of the hostage crisis. "The Government must pay just compensation when it furthers the Nation's foreign policy goals by using as 'bargaining chips' claims lawfully held by a relatively few persons and subject to the jurisdiction of our courts." *Dames & Moore*, 453 U.S. at 691, 101 S.Ct. at 2992–93 (Powell, J., concurring in part and dissenting in part). This was a national crisis and the takings clause was " 'designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " *First English Evangelical Lutheran Church v. County of Los Angeles*, —— U.S. ——, 107 S.Ct. 2378, 2388, 96 L.Ed.2d 250 (1987) (quoting *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960)).

The government counters, however, that there is no taking because Sperry benefited from the Tribunal and "fails to recognize that it is well-established that those who trade and travel abroad rely principally upon the relationships between our Government and others as the foundation for all rights." We have no quarrel with the latter proposition, but we do not see the benefit of the Tribunal to Sperry when prior to the Accords it had secured the attachment of Iranian assets sufficient to cover its eventual award and, had the President not suspended American claims, would have had no need for the Tribunal.

This was not a situation like *Shanghai Power Co. v. United States*, 4 Cl.Ct. 237 (1983), *aff'd mem.*, 765 F.2d 159 (Fed.Cir. 1985), on which the government relies, where an American claimant had no recourse against the People's Republic of China, which had years before expropriated its plant, except through the intervention of the United States. Unlike in *Shanghai*,

Sperry did not need to rely on the relationship between our government and Iran to recover until the circumstances were altered by the presidential action. Indeed, in *Dames & Moore* the petitioner, situated similarly to Sperry, had already secured a judgment against Iran in district court, 453 U.S. at 666, 101 S.Ct. at 2979–80, which only the Supreme Court's decision upholding the nullification of attachments and the suspension of claims prevented of execution.

The President has broad power to resolve international disputes by settling claims, and in certain circumstances some claimants may have to bear a disproportionate burden when settlements result in less than their entitlement. *See id.* at 679, 101 S.Ct. at 2986–87. But when the President has divested them of full judicial remedies in federal courts as here, the government cannot diminish the substitute compensation of the alternative forum by arbitrarily keeping a portion for itself.

We are also unpersuaded by the government's related contention that Sperry should have expected the deduction because the United States has routinely deducted a percentage from funds distributed by the Foreign Claims Settlement Commission to United States nationals in settlement of claims against foreign countries. *See* 22 U.S.C. § 1626(b). The government argues that Sperry's claims are "analogous" to those handled by the Commission. On the contrary, our situation is entirely different because as we have seen Sperry, unlike claimants before the Commission, had effective recourse to the United States courts, of which it was divested. *See* H.R. Rep. 6382, 84th Cong., 1st Sess., *reprinted in* 1955 U.S.Code Cong. & Admin.News 2745, 2747; *see also* Marks & Grabow, *The President's Foreign Economic Powers after Dames & Moore v. Regan: Legislation by Acquiescence*, 68 Cornell L.Rev. 68, 89–90 (1982) (prior to the Accords, the President had never "settled the commercial claims of American citizens enforceable in United States courts"). Claimants who use the Foreign Claims Settlement Commission ordinarily are otherwise disabled from collecting from the foreign state and do in-

deed receive a benefit from the Commission. That was not true of Sperry and the Tribunal. And even if the deduction could be said to be "expected," the expectation could only arise after Sperry was forced to proceed before the Tribunal. But the point is, expectation or not, no deduction is assessed in the United States district court, whose jurisdiction Sperry had a right to invoke, but it was extracted from the Tribunal award, purportedly the substitute for a court judgment.

The government is uncertain whether the deduction should be viewed as a fee or a tax. The statute never refers to it as a tax but simply captions it a "[d]eduction for expenses of the United States." Pub.L. No. 99–93, § 502, 99 Stat. 437, 438. There is nothing in the hearings to suggest it is a tax; indeed, the deduction is referred to as a "fee" throughout, e.g., *Iran Claims Legislation: Hearings on S. 771 and S. 116 Before the Senate Committee on Foreign Relations*, 99th Cong., 1st Sess. 1, 2 (1985), and both a State Department official and the department's responses to submitted questions called it a "fee." *Id.* at 15, 112, 113. We are not inclined to disagree. Nor are we inclined to get immersed in a discussion over the alternative argument that the deduction was intended as a user fee, especially in light of the improbability of the argument because the fee falls only on successful claimants, not on all who "use" the Tribunal. *Cf. Massachusetts v. United States*, 435 U.S. 444, 468, 98 S.Ct. 1153, 1167–68, 55 L.Ed.2d 403 (1978). Whatever it was thought to be, it was a taking of Sperry's money to help settle the national crisis, a burden the government must bear on behalf of all of us. To the extent the Iran Claims Settlement Act put that burden on Sperry alone, it is inconsistent with the fifth amendment and cannot stand.

Our conclusion makes it unnecessary to consider Sperry's equal protection, due process, and origination clause arguments.

### Conclusion

Accordingly, the judgment of the Claims Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.