MARKEY, Circuit Judge.
The Sperry Corporation and Sperry World Trade, Inc. (Sperry)[1] appeal from a judgment of the United States Claims Court holding, inter alia that the Iran Claims Settlement Act (Act)[2] was not enacted in violation of the Origination Clause of the Constitution. Sperry Corp. v. United States, 12 Cl.Ct. 736 (1987). We affirm.
BACKGROUND
In the Claims Court opinion cited above, that court held that the Act did not constitute a taking under the Just Compensation clause of the Fifth Amendment and was not violative of the Origination Clause of the Constitution, Art. 1, § 7. Having reversed on the taking issue, this court declined to reach Sperry’s Origination Clause arguments. Sperry Corp. v. United States, 853 F.2d 904 (Fed.Cir.1988). The Supreme Court reversed, having determined that the Act’s 1.5% deduction from awards of the Iran-United States Claims Tribunal (Tribunal) was a “reasonable user fee”. The Court rejected Sperry’s Due Process and equal protection arguments and declined to reach the Origination Clause issue. United States v. Sperry Corp., 493 U.S. 52, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989). The case is thus here *401 on remand from the Supreme Court for consideration of Sperry’s Origination Clause arguments.[3]
OPINION
The Origination Clause reads: “All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills.” U.S. Const, art. I, § 7.[4] Sperry says the Act originated as a bill “for raising Revenue” because it: (1) created a deduction from Tribunal awards independently of and four years after the establishment of the Tribunal; and (2) had the raising of revenue as its primary purpose.
1. Independent Creation
Sperry asks us to apply a bright line standard under which a user fee originating in the Senate violates the Origination Clause whenever it is not established, in the same legislation as that establishing the program to which the fee relates. However, the Supreme Court’s caution against attempting a general statement to cover every possible phase in determining whether bills are violative of the Origination Clause, Twin City Bank v. Nebeker, 167 U.S. 196, 202, 17 S.Ct. 766, 768, 42 L.Ed. 134 (1896), is directly applicable to this case.
In citing United States v. Munoz-Flores, — U.S. -, 110 S.Ct. 1964, 1972, 109 L.Ed.2d 384 (1990) for its statement that “a statute that creates a particular governmental program and that raises revenue to support that program, as opposed to a statute that raises revenue to support government generally, is not a ‘Bil[l] for raising Revenue’ within the meaning of the Origination Clause”, Sperry confuses sufficiency with necessity. That Munoz-Flores recognizes simultaneous creation of a service and a fee for its use as sufficient to render a Senate-originated user fee bill constitutionally permissible in a particular case does not mean that simultaneous creation is in every case a constitutional necessity.
In sum, the test under the Origination Clause is what was enacted, not when was the enactment. If a bill is not one for “raising revenue” it may originate in the Senate, and we are aware of no constitutional provision that would govern the timing of its enactment. The same, of course, is true of a bill that is one for “raising revenue”; its enactment is constitutionally prohibited, regardless of its place in a legislative sequence. Simultaneous enactment of bills creating a service and assessing a fee may serve as some evidence that the involved charge is a user fee, but the absence of simultaneous enactment cannot alone mandate a determination that the involved bill is one “for raising revenue”.
2. Purpose of the Act
The Supreme Court has said: “revenue bills are those that levy taxes in the strict sense of the word, and are not bills for other purposes which may incidentally create revenue.” Twin City Bank v. Nebeker, 167 U.S. 196, 202, 17 S.Ct. 766, 769, 42 L.Ed. 134 (1897). Sperry does not say the bill that led to the Act levied taxes but does say it was not a bill for “other purposes” because its primary purpose was the raising of revenue. Sperry has shown no error, however, in the Claims Court holding that raising revenue was not the primary purpose of the bill that led to the Act.
Sperry’s attempt to minimize those provisions of the bill that deal with other purposes must fail. It rests on assertions that some of those other purposes are inapplicable to Sperry's present claim and that some others occupy fewer lines in the bill than does the deduction section. However, the *402 nature of a litigant’s claim cannot retroactively control the nature of a bill and line counting bears no relationship to the relative importance of sections of a bill. Indeed, application of Sperry’s reasoning would render the deduction section less important, for it occupies fewer lines than do some other provisions. Sperry has simply not demonstrated that the deduction provision is of such “overwhelming importance” as to convert what was a bill establishing a user fee into a bill for raising revenue.
That the one and a half percent deductions are recovered as “miscellaneous receipts” into the United States Treasury does not of itself, as Sperry argues, require a holding that revenue raising was the Bill’s primary purpose in this case. Providing funds to the general Treasury does not necessarily and in every instance make a bill one “for raising revenue.” Munoz-Flores upheld a law which required funds collected beyond an annual cap to be “deposited in the general fund of the Treasury.” See 42 U.S.C. § 10601. Though the 1.5% deduction was here fully recoverable in the Treasury, we cannot accept that circumstance as sufficient to undermine or counter the purpose stated by Congress in the Act. As the Supreme Court said in United States v. Sperry, 110 S.Ct. at 392, “Section 502(a) states that these charges are to be deducted ‘as reimbursement to the United States Government for expenses incurred in connection with the arbitration of claims of United States claimants against Iran before [the] Tribunal ... ’ ”.[5]
It may be that earmarking every user fee for payment directly into an account controlled by the agency rendering the service would or would not make easier the publication of a “regular Statement and Account of the Receipts and Expenditures of all public money”, Const. Art. 1, Sec. 9, cl. 7. Such a practice might also aid the courts in identifying a user fee. But the in-bound routing of government receipts is a matter for the Congress, not the courts, to decide, and, again, we are aware of no constitutional provision against recovery of user fees into the Treasury.
The judgment of the Claims Court is AFFIRMED.

. Sperry Corporation merged with Burroughs Corporation and the successor corporation is named UNISYS Corporation.

. Title V of the Foreign Relations Authorization Act, Fiscal Years 1986 and 1987, Pub.L. No. 99-93, §§ 501-05, 99 Stat. 437-39, 50 U.S.C. § 1701 note (Supp. IV 1986). We deal here only with the Iran Claims Settlement Act.

. The descriptions of the relevant facts in the opinions cited above make a repetition here unnecessary.

. Sperry says the Act amends a House-originated bill that clearly was not a revenue raising bill. That the Senate was not here exercising its power under the Constitution to amend a revenue-raising bill, does not, however, mean that a bill that is not itself a revenue-raising bill may not originate in the Senate. The dispositive issue here is thus the nature of the bill that resulted in the Act.

. Nothing here said should be taken as suggesting a view that the Senate may constitutionally originate and enact revenue-raising bills so long as it merely describes such bills as "user fees" or "reimbursement” of governmental program expenses.